Terry A. SCOTT, Plaintiff-Appellant,

v.

James R. SCHLESINGER, Secretary of Defense of the United States of America, et al., Defendants-Appellees.

Nos. 73–3382 and 74–1636.

United States Court of Appeals, Fifth Circuit.

Aug. 16, 1974.

Roger C. Myers, pro se.

Stanley McMurry, Dallas, Tex., for Cap. Records.

James W. Mehaffy, Beaumont, Tex., for Columbia.

R. Daniel Settle, Fort Worth, Tex., for RCA.

J. Hoke Peacock, II, Beaumont, Tex., for Harry Fox Agency, Inc.

John F. Still, pro se.

Joseph Bonner, Nowata, Okl., for other defendants-appellees.

Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.

**1094**

Charles Dickens, Frank W. Sullivan, III, Ft. Worth, Tex., for plaintiff-appellant.

Frank D. McCown, U. S. Atty., William L. Johnson, Jr., Asst. U. S. Atty., Ft. Worth, Tex., for defendants-appellees.

Before BROWN, Chief Judge, and RIVES and DYER, Circuit Judges.

RIVES, Circuit Judge:

This is a consolidated appeal from two separate orders of the district court. On October 1, 1973, the district court denied declaratory, injunctive and habeas corpus relief sought by petitioner-appellant Scott prior to a general court-martial convened to try him for alleged violations of the Uniform Code of Military Justice. On February 11, 1974, following petitioner-appellant's trial and conviction, the district court denied Scott's petition for habeas corpus relief, and refused to restrain Scott's transfer from Carswell Air Force Base in Texas to Fort Leavenworth, Kansas.[1] We affirm.

**I.**

Terry A. Scott was formerly a sergeant in the United States Air Force assigned to Carswell Air Force Base, Texas (hereafter Carswell). On May 22, 1973, Scott was charged with violating Articles 92 and 134 of the Uniform Code of Military Justice. Charge 1 alleged violation of Article 92 in that Scott wrongfully sold LSD at Carswell (Specification 1), wrongfully possessed LSD at Carswell (Specification 2) and wrongfully sold LSD at Fort Worth, Texas (Specification 3). Charge 2 alleged violation of Article 134 in that Scott wrongfully sold marijuana to an airman at Fort Worth (Specification 1), wrongfully sold marijuana to two airmen at Carswell (Specifications 2 and 3) and wrongfully possessed marijuana at Carswell (Specification 4). On June 29, 1973, the appropriate authority convened a general court-martial at Carswell.

---

1. The primary question presented in No. 73-3382, whether the district court should have enjoined the court-martial, is no longer viable since the threatened court-martial has now taken place. Most of the issues raised in No. 73-3382 are; however, presented in No. 74-1636, which is an appeal from the district court's post court-martial denial of habeas corpus relief.

On September 6, Scott filed a complaint in the United States District Court for the Northern District of Texas, alleging jurisdiction under 28 U.S.C. § 1331, § 2201 and § 2241. Scott claimed that Articles 92 and 134 were unconstitutionally vague and overbroad; that Article 92 did not prohibit the conduct with which he was charged; and that Specification 3 of Charge 1, which alleged the off-base sale of LSD, was not "service-connected." O'Callahan v. Parker, 1969, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 and Relford v. U. S. Disciplinary Commandant, 1971, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102. Scott requested a declaration that Article 134 was unconstitutional, a permanent injunction restraining the military authorities from proceeding with the general court-martial, and his immediate release from custody and/or restrictions. The district court denied relief. On October 30 this Court denied an application for stay of the court-martial proceedings pending review of the case on appeal.

On November 14, 1973, Scott was tried by general court-martial and found guilty of all charges and specifications. He was sentenced to a bad conduct discharge, reduction in grade, forfeiture of all pay and allowances, and confinement at hard labor for five years. On January 25, 1974, the reviewing authority affirmed Scott's conviction but reduced the confinement sentence to four years at hard labor.

On February 7, Scott again petitioned the district court for relief, alleging jurisdiction under 28 U.S.C. § 2241 and § 2255. Renewing his legal arguments concerning the unconstitutionality of Articles 92 and 134, and claiming lack of military jurisdiction over off-base LSD and marijuana transactions, Scott requested habeas corpus relief. He also asked for an injunction restraining the military authorities from removing him from Carswell, arguing that such removal from the vicinity of his civilian counsel would deny him his right to counsel at a crucial stage of the proceedings in violation of the Sixth Amendment. The district court again denied relief.

II.

■■ This appeal presents a threshold question of whether the federal civilian courts should rule on Scott's claims before he has fully exhausted his military remedies. Also presented are ultimate questions relating to the constitutionality of Articles 92 and 134, and the "service-connection" of certain off-base, off-duty drug offenses. The Supreme Court has recently held that Articles 133 and 134 are not unconstitutionally vague or overbroad. Parker v. Levy, 1974, —— U.S. ——, 94 S.Ct. 2547, 41 L.Ed.2d ——. This ruling clearly eliminates Scott's claim concerning Article 134. Also, we are convinced that Scott's claim that Article 92 is unconstitutionally vague does not raise a substantial question in the circumstances of this case.[2] As to the

---

2. Charge 1 alleged a violation of Article 92 of the Uniform Code of Military Justice. Article 92 in relevant part provides:

"Any person subject to this chapter who—
"(1) violates or fails to obey any lawful general order or regulation;

. . . . .

"shall be punished as a court-martial may direct."

Specifications 1, 2 and 3 of Charge 1 allege a violation of Paragraph 31 of Air Force Regulation 30–19, which provides:

"31. Dangerous Drugs. Members subject to the Uniform Code of Military Justice will not use, possess, sell, or transfer any dangerous drug specified in paragraph 1a, nor will they introduce any such drug onto any Air Force installation or other Gov-

ernment property, violations of these prohibitions are chargeable under UCMJ, Article 92(a), 'Failure to Obey Order or Regulation' . . . ."

Paragraph 1a reads:
"a. Dangerous Drugs. Those nonnarcotic drugs that are habit-forming .or have a potential for abuse because of their stimulant, depressant, or hallucinogenic effect, as determined by the Attorney General of the United States (See Title 21 of the Code of Federal Regulations). This category includes, but is not limited to, amphetamines, barbiturates, LSD, mescaline, STP, and psilocybin."

There is no vagueness at all about whether Air Force Regulation 30–19 prohibits the possession or sale of LSD, and there is no

service-connection issue, the Supreme Court has granted certiorari in a case involving the question of whether certain narcotic offenses of military personnel which were allegedly committed off-base, off-duty, and out of uniform, are "service connected." Schlesinger v. Councilman, 1973, 414 U.S. 1111, 94 S. Ct. 839, 38 L.Ed.2d 737. If we reached the service-connection question, we might stay the present proceedings until the Supreme Court has decided the *Councilman* case. We need not decide whether a stay would be appropriate, however, for we conclude that Scott's petition must be denied on the threshold issue of failure to exhaust his available military remedies.

In Noyd v. Bond, 1969, 395 U.S. 683, 693–694, 89 S.Ct. 1876, 1882, 23 L.Ed.2d 631, the Supreme Court discusses the issue of exhaustion of military remedies:

"We now turn to consider whether petitioner could properly seek his release in civilian courts without making any effort to invoke the assistance of the courts within the military system. Gusik v. Schilder, 340 U.S. 128, [71 S.Ct. 149, 95 L.Ed. 146] (1950), established the general rule that habeas corpus petitions from military prisoners should not be entertained by federal civilian courts until all available remedies within the military court system have been invoked in vain. *Mr. Justice Douglas*, for a unanimous Court, explained some of the important reasons which require civilian courts to respect the integrity of the military court system that Congress has established:

" 'An analogy is a petition for habeas corpus in the federal court challenging the jurisdiction of a state court. If the state procedure provides a remedy, which though available has not been exhausted, the federal courts will not interfere

. . . . The policy underlying that rule is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts. If an available procedure has not been employed to rectify the alleged error which the federal court is asked to correct, any interference by the federal court may be wholly needless. The procedure established to police the errors of the tribunal whose judgment is challenged may be adequate for the occasion. If it is, any friction between the federal court and the military or state tribunal is saved. . . . Such a principle of judicial administration is in no sense a suspension of the writ of habeas corpus. It is merely a deferment of resort to the writ until other corrective procedures are shown to be futile.' *Id.*, at 131–132, 71 S.Ct. 149, at 151–152.

It is true, of course, that the principles of federalism which enlighten the law of federal habeas corpus for state prisoners are not relevant to the problem before us. Nevertheless other considerations require a substantial degree of civilian deference to military tribunals. In reviewing military decisions, we must accommodate the demands of individual rights and the social order in a context which is far removed from those which we encounter in the ordinary run of civilian litigation, whether state or federal. In doing so, we must interpret a legal tradition which is radically different from that which is common in civil courts."

In a footnote at 696, 89 S.Ct. at 1884, the Court recognized that there could be exceptions to the "general rule."

"8   Petitioner contends that our decisions in Toth v. Quarles, 350 U.S. 11, [76 S.Ct. 1, 100 L.Ed. 8] (1955);

---

vagueness about whether Article 92 prohibits a violation or failure to obey a lawful regulation. Particularly in light of Parker v. Levy, *supra*, decided after this case was submitted, we conclude that Scott's vagueness

argument is meritless. We therefore do not decide whether the exhaustion rule would apply where a serviceman has been convicted under an arguably unconstitutional statute.

Reid v. Covert, 354 U.S. 1, [77 S.Ct. 1222, 1 L.Ed.2d 1148] (1957); and McElroy v. Guagliardo, 361 U.S. 281, [80 S.Ct. 305, 4 L.Ed.2d 282] (1960), justify his position that exhaustion of military remedies is not required in this case. The cited cases held that the Constitution barred the assertion of court-martial jurisdiction over various classes of civilians connected with the military, and it is true that this Court there vindicated complainants' claims without requiring exhaustion of military remedies. We did so, however, because we did not believe that the expertise of military courts extended to the consideration of constitutional claims of the type presented. Moreover, it appeared especially unfair to require exhaustion of military remedies when the complainants raised substantial arguments denying the right of the military to try them at all. Neither of these factors is present in the case before us."

In Dooley v. Ploger, 4 Cir. 1974, 491 F.2d 608, the petitioner relied heavily on the above-quoted footnote from *Noyd* to argue that the rule of exhaustion of military remedies does not apply to cases challenging a military court's jurisdiction. The petitioner in that case argued that the service-connection of the offense, like the military status of the defendant, is a jurisdictional prerequisite. After noting some doubt as to whether service-connection is in fact a jurisdictional question,[3] the court in *Dooley* convincingly discusses why the rule of exhaustion of remedies should apply where a serviceman claims that his offense lacks service-connection. See 491 F.2d at 613–615. As Judge Winter states, "here, as in cases where the challenge may not be termed 'jurisdictional,' it is important to respect the orderly processes of the military court system, to avoid needless friction, and to have the facts developed and the law interpreted by the expert adjudicatory tribunals charged in the first instance with responsibility for offenses of members of the armed services." 491 F.2d at 613.[4]

■ We agree with the approach taken by the Fourth Circuit in *Dooley, supra,* and conclude that the rule of exhaustion of remedies is applicable where a serviceman brings a proceeding chal-

---

3. In Gosa v. Mayden, 1973, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873, Mr. Justice Blackmun for the plurality characterized *O'Callahan* as a holding that "the exercise of jurisdiction [by the court-martial] was not appropriate . . . [but not as a holding] that a military tribunal was and always had been without authority to exercise jurisdiction over a nonservice connected offense." 413 U.S. at 677–678, 93 S.Ct. at 2935. Mr. Justice Marshall in dissent disagreed:

"I am unable to agree with the plurality's characterization of *O'Callahan.* In my view, it can only be understood as a decision dealing with the constitutional limits of the military's adjudicatory power over offenses committed by servicemen. No decision could more plainly involve the limits of a tribunal's power to exercise jurisdiction over particular offenses and thus more clearly demand retroactive application." 413 U.S. at 694, 93 S.Ct. at 2943.

4. Judge Winter distinguishes the so-called "civilian cases" cited in the footnote *in Noyd* as follows:

"The significant distinction between the civilian cases and the instant appeals is that here 'the expertise of military courts [does] exten[d] to the consideration of constitutional claims of the type presented.' Resolution of the civilian cases principally involved traditional questions of constitutional law. Unlike Dooley's claim, the civilian cases involved no disputed questions of fact and no questions on which the expert opinion of the military courts would be helpful. Resolution of the *O'Callahan* questions presented by these appeals depends for the most part on the fact-finding process—which will determine the circumstances under which any offense has been committed—and on a judgment of the impact of the offenses on the combat effectiveness of the armed forces. Expert understanding of the special circumstances of military life obviously would influence what facts are found from the evidence and what significance is attached to them. Thus, in the immediate case, unlike the civilian cases, the expertise of the military courts is most relevant to constitutional decision." (Footnote omitted.)

lenging the service-connection of an offense for which he is to be tried, or for which he has been convicted by a military court-martial. *Accord*, Sedivy v. Richardson, 3 Cir. 1973, 485 F.2d 1115. Also see Cole v. Laird, 5 Cir. 1972, 468 F.2d 829; Diorio v. McBride, N.D.Ala. 1969, 306 F.Supp. 528, 531–533, aff'd on other grounds, 5 Cir. 1970, 431 F.2d 730; Hamlin v. Laird, S.D.Ga.1972, 371 F.Supp. 806. *But see* Lyle v. Kincaid, M.D.Fla.1972, 344 F.Supp. 223, 224, modified 352 F.Supp. 81; Wishmeyer v. Bolton, N.D.Fla.1973, 361 F.Supp. 629, 630; Moylan v. Laird, D.R.I.1969, 305 F.Supp. 551; Councilman v. Laird, 10 Cir. 1973, 481 F.2d 613, cert. granted sub nom., Schlesinger v. Councilman, 1973, 414 U.S. 1111, 94 S.Ct. 839, 38 L. Ed.2d 737; Chastain v. Slay, D.Colo. 1973, 365 F.Supp. 522, 523; Schroth v. Warner, D.Hawaii 1973, 353 F.Supp. 1032, 1036; Redmond v. Warner, D. Haw., 1973, 355 F.Supp. 812, 814–815; Holder v. Richardson, D.D.C.1973, 364 F.Supp. 1207, 1209.

The Fourth Circuit concluded that Dooley should exhaust available military remedies, especially fact-finding remedies, before he could resort to the civilian courts. The court in *Dooley* added this limitation, however:

"While exhaustion applies as long as there is an available, unused remedy which may result in relief. *Gusik, supra*, we have never required exhaustion where the outcome would predictably be futile. If, as Dooley contends, the United States Court of Military Appeals has held in United States v. Rose [19 U.S.C.M.A. 3, 41 C.M.R. 3 (1969)], and other cases, that *any* delivery of narcotics by one serviceman to another is *per se* service-connected, whether on-base or off-base and irrespective of other circumstances, we would not require Dooley to prosecute his case to that court. Nonetheless, Dooley would be required to exhaust the fact-finding mechanisms of the system of military justice." (Footnotes omitted.) 491 F.2d at 614–615.

In the present case, Scott contends that exhaustion of his military remedies would be an "exercise in futility." We do not agree.

First, Scott has not exhausted the available fact-finding mechanisms. During oral argument, Scott's counsel conceded that a direct appeal from Scott's conviction is pending before the Court of Military Review. Under 10 U. S.C. § 866(c) the Court of Military Review has the following responsibilities and powers with regard to the underlying facts of the case:

"In a case referred to it, the Court of Military Review may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses."

For purposes of the present proceeding, Scott on September '20 conceded certain facts with regard to Charge 1, Specification 3 and Charge 2, Specification 1. However, he expressly indicated that he would not be bound by this stipulation in any subsequent court-martial. Scott apparently challenged at the court-martial and is challenging in the Court of Military Review some or all of the factual allegations and/or the sufficiency of the evidence. Under these circumstances, it cannot be said that Scott has exhausted the available fact-finding mechanisms of the system of military justice.

Second, Scott's counsel indicated at oral argument that Scott has raised a number of issues before the Court of Military Review which he has not raised here. In several cases involving petitions for habeas corpus from state con-

victions, this Court has held that where an appeal on the merits is presently pending before a state appellate court, even if there has been an exhaustion with regard to one particular issue, the petitioner has not exhausted his available state remedies. Williams v. Bailey, 5 Cir. 1972, 463 F.2d 247; Bryant v. Bailey, 5 Cir. 1972, 464 F.2d 560, cert. den., 409 U.S. 1115, 93 S.Ct. 932, 34 L. Ed.2d 698. In Williams v. Bailey, *supra*, 463 F.2d at 248, the Court explained its reasoning:

> "'While the federal constitutional question which * * * [he presents] in this federal habeas proceeding may not be available to * * * [him] on * * * [his] state appeal, that appeal may result in reversal on some other ground, thereby mooting the federal question.' Davidson v. Klinger, 9 Cir. 1969, 411 F. 2d 746. Moreover, federal disruption of the state judicial appellate process would be an unseemly and uncalled for interference that comity between our dual system forbids."

Besides the fact that Scott has raised a number of issues before the Court of Military Review in addition to the service-connection issue, Scott does not claim lack of service-connection as to five of the seven specifications for which he was adjudged guilty. Under these circumstances, even if it were established that appeal on the service-connection issue would be futile, we conclude that Scott should exhaust his available military remedies on the other issues now before the Court of Military Review prior to consideration of the service-connection issue by the federal civilian courts.[5]

Finally, we are not entirely convinced that exhaustion of military remedies on the issue of the service-connection of the off-base, off-duty drug offense would be futile. Although it is true that the Court of Military Appeals has indicated that it considers all sales of drugs by one serviceman to another to be service-connected, United States v. Rose, 1969, 19 U.S.C.M.A. 3, 41 C.M.R. 3, this area of the law is now in some uncertainty, *e. g.*, Councilman v. Laird, 10 Cir. 1973, 481 F.2d 613, cert. granted sub nom., Schlesinger v. Councilman, 1973, 414 U. S. 1111, 94 S.Ct. 839, 38 L.Ed.2d 737, and it is not unreasonable to suppose that the Court of Military Appeals might reconsider its views in this area.[6]

### III.

Article 58(a), 10 U.S.C. § 858(a) provides that "Under such instructions as the Secretary concerned may prescribe, a sentence of confinement adjudged by a court-martial . . . may be carried into execution by confinement in any place of confinement under the control of any of the armed forces . . . ." Following Scott's conviction and sentence of confinement, it was ordered on January 25 that Scott be transferred from Carswell to the United States Disciplinary Barracks at Fort Leavenworth, Kansas. On January 28 Scott requested through counsel that he be allowed to remain at Carswell pending review of his case by both the military and civilian courts, "so that he may have access to his attorneys and assist them in the preparation of these cases."

On February 7, Scott filed his second petition in the district court. Attached to this petition was an affidavit by Scott's civilian attorneys stating that counsel for Scott learned on February 6 that the request for delay of transfer had been denied, and that Scott would be transferred to Fort Leavenworth on February 8. The affidavits stated that "the presence of Petitioner in the rea-

---

5. The rule of exhaustion is founded on flexible considerations of comity. See West v. State of Louisiana, 5 Cir. 1973, 478 F.2d 1026, 1034–1035.

6. *See* United States v. Morley, 1970, 43 C. M.R. 19, where the Court of Military Appeals held that an off-base, off-duty sale of marijuana to a civilian was not service-connected.

sonable vicinity of their offices is essential to the preparation of his case on appeal." The petition claimed that removal of Scott would effectively deny him his right to counsel at a crucial stage of the proceedings against him, and requested injunctive relief. .

The district court in its order of February 11 stated that "Petitioner has failed to persuade the Court that valid reasons exist for his being retained at Carswell during the appeal of his conviction and no authorities have been offered in support of the request for injunctive relief." On this appeal Scott has not alleged any particulars as to how his transfer has interfered with his Sixth Amendment right to counsel, nor has he alleged that his transfer was ordered with an intent to deprive him of the assistance of counsel. We therefore conclude that the district court was correct in its ruling on this issue.

Affirmed.