**Vicki R. CHAMPAGNE and Sandra L. Stout, Plaintiffs-Appellants,**

v.

**James R. SCHLESINGER, Secretary of Defense, et al., Defendants-Appellees.**

No. 73–1933.

United States Court of Appeals, Seventh Circuit.

Heard Oct. 4, 1974.

Decided Dec. 9, 1974.

Linda R. Hirshman, Harold C. Hirshman, Chicago, Ill., for plaintiffs-appellants.

James R. Thompson, U. S. Atty., Gary L. Starkman and Ann C. Tighe, Asst. U. S. Attys., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, STEVENS and TONE, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiffs were seamen apprentices in the United States Navy and were stationed at the Naval Hospital Corps School in Great Lakes, Illinois. According to their amended complaint, they enlisted in the Navy for three years commencing August 11, 1972, and allegedly discharged their naval duties in a satisfactory manner. After basic training in Orlando, Florida, they were assigned to the Great Lakes Naval Hospital Corps School for further training and their enlistment contracts were extended for another year.

On November 30, 1972, plaintiffs were interrogated about off-base homosexual conduct that occurred on leave at the Holiday Inn in Kenosha, Wisconsin, on November 24, 1972. On February 28, 1973, plaintiffs appeared before a Great Lakes Field Board convened to consider their dismissal from service. Each testified that she was a homosexual. The Navy's proof was limited to evidence of apparently consensual homosexual activity during off-duty hours away from na-

val property. One exhibit reported that the plaintiffs were "going" together; they shared an off-base apartment. On March 14, 1973, the Field Board recommended that plaintiffs be discharged from the Navy by reason of unfitness. Instead of honorable discharges, the Board recommended that the separations be "under honorable conditions—general discharge or as warranted by Service Record."[1] One of the three Board members dissented on the ground that plaintiffs "have demonstrated their ability to perform in a military environment without conflict from their private sexual beliefs."

The Naval Bureau of Personnel subsequently accepted the recommendation of the Field Board and ordered that plaintiffs be discharged from the Navy pursuant to its findings. On May 18, 1973, after the district court refused to issue an order delaying their discharges,[2] the plaintiffs received general discharges under honorable conditions.

Plaintiffs based this suit on the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202). Their amended complaint sought a declaration that the Field Board's recommendations for discharge and any discharges based thereon were void and a declaration that Bureau of Naval Personnel Manual Section 3420220 (reproduced *infra*) "as it relates to private consensual homosexual conduct between adults is void and of no effect because it is in violation of the United States Constitution." Appropriate injunctive relief was also sought.

Plaintiffs moved for a preliminary injunction to reinstate them in the Navy pending the outcome of this suit. Thereafter, the Government moved the district court to deny plaintiffs' motion for preliminary injunction and to dismiss the complaint on the ground that plaintiffs failed to exhaust their administrative remedies before the Board for Correction of Naval Records ("BCNR") and failed to state a claim upon which relief could be granted.

In a June 15, 1973, minute order, the district court denied defendants' motion to dismiss "for want of primary jurisdiction," and also denied plaintiffs' motion for issuance of a preliminary injunction. Thereafter the respective parties filed motions for summary judgment. On September 6, 1973, pursuant to an unreported memorandum and order, the district court granted the Government's motion for summary judgment and simultaneously denied plaintiffs' motion for summary judgment.

In its memorandum opinion, the trial court weighed an individual's right of privacy against "the countervailing right on behalf of the military to demand the highest standards of discipline, obedience and personal conduct." After stating that the Secretary of the Navy had declared homosexual conduct intolerable in that branch of the Armed Forces, the court ruled "that a limited inquiry by the military into the personal conduct of those of its members pursuant to lawful authority does not constitute an unlawful invasion into the plaintiffs' constitutional rights to privacy." After summary judgment was entered for defendants, this appeal followed.

The pertinent regulations appear in Section 3420220 of the Bureau of Naval Personnel Manual (32 CFR § 730.12 (1973)) and the pertinent implementation policy is in Secretary of the Navy Instruction ("SECNAVINST") 1900.9A.

---

1. For a short explanation of the difference between an honorable discharge and a general discharge under honorable conditions, including the harmful effects of the latter that are carried over into civilian life, see Everett, "Military Administrative Discharges—The Pendulum Swings," 1966 Duke L.J. 41, 43–45 (1966) and authorities cited therein.

2. On May 1, 1973, the district court denied plaintiffs' application for a temporary restraining order. That court subsequently refused to stay the discharges pending appeal to this Court of its decision denying the temporary restraining order. On May 2, 1973, this Court denied plaintiffs' motion for an injunction pending appeal and on June 18, after they had been discharged, plaintiffs were granted leave to dismiss their original appeal.

The relevant provisions of Section 3420220 follow:

"2. Members may be separated by reason of unfitness with an undesirable discharge or with a more creditable type discharge when it is warranted by the particular circumstances in a given case. A discharge by reason of unfitness, regardless of the attendant circumstances, shall be effected only when directed by or authorized by the Chief of Naval Personnel.

"3. Members may be recommended for discharge by reason of unfitness for:

\*   \*   \*   \*   \*   \*

"e. Homosexual acts. Processing for discharge is mandatory. (See SECNAVINST 1900.9 series for controlling policy and additional action required in cases involving homosexuality.)"

The policy instruction prescribed in said SECNAVINST 1900.9A provides:

"4. Policy. The following policy is prescribed:

"a. General. Members involved in homosexuality are military liablities who cannot be tolerated in a military organization. In developing and documenting cases involving homosexual conduct, commanding officers should be keenly aware that members involved in homosexual acts are security and reliablity risks who discredit themselves and the naval service by their homosexual conduct. Their prompt separation is essential. At the same time, every safeguard must be taken to insure against unjust action that will stigmatize an innocent person."

As an alternative to affirmance of the judgment below, defendants ask this Court to remand the case with directions to dismiss the complaint for failure to exhaust administrative remedies. Plaintiffs counter by arguing that this option is unavailable to the Court because defendants did not cross-appeal from the denial of their motion to dismiss. If plaintiffs' contention is upheld it may be unnecessary to discuss exhaustion; therefore, we must deal first with the threshold issue whether this Court may consider dismissing for failure to exhaust in the circumstances of this case in the absence of a cross-appeal by defendants.

We follow the precedents which hold that since exhaustion is a quasi-jurisdictional problem and one of judicial administration, it is within the discretion of this Court to consider it *sua sponte*, and we find it appropriate to do so here. Hodges v. Callaway, 499 F.2d 417, 419 (5th Cir. 1974); Bolger v. Marshall, 90 U.S.App.D.C. 30, 193 F.2d 37, 39 (1951). Therefore, we do not accept plaintiffs' contention that defendants' failure to take a cross-appeal precludes them from arguing exhaustion on appeal.[3] The parties have briefed the exhaustion issue both here and below, so that we have the benefit of their arguments.

Defendants assert that plaintiffs must seek review with the BCNR before being entitled to judicial relief. The BCNR was established pursuant to 10 U.S.C. § 1552 and is composed of civilian members. Its authority, function and procedures are set forth in 32 CFR § 723. Our study of the applicable regulations satisfies us that the BCNR is empowered to consider the validity of plaintiffs' discharges and to recommend to the Secretary of the Navy appropriate relief, in-

---

**3.** For a recent study of the cross-appeal problem, see Stern, "When to Cross-Appeal or Cross-Petition—Certainty or Confusion?", 87 Harv.L.Rev. 763 (1974), where the author argues persuasively that appeals need only be taken from portions of the court's order which a litigant seeks to change, not from parts of an opinion with which the litigant disagrees. Ibid, at 774. See also United States v. Finn, 502 F.2d 938, 940 (7th Cir. 1974); 9 Moore's Federal Practice (2d ed.) ¶ 204.11 [3], pp. 934–935. Since the defendants prevailed below, it is immaterial that they won a summary judgment on the merits rather than a dismissal for failure to exhaust administrative remedies, which was their primary point of attack. Of course, the order denying the Government's motion to dismiss for failure to exhaust administrative remedies was non-final and hence not appealable. 9 Moore's Federal Practice (2d ed.) ¶ 110.08 [1], p. 113.

cluding reinstatement and back pay.[4] Although the BCNR only recommends, it appears that its recommendations may be rejected only if the Secretary of the Navy states explicit policy reasons for so doing. Arbitrary rejection can result in judicial reversal of the Secretary's decision.[5] Furthermore, under 32 CFR § 723.3(b), the plaintiffs have 3 years "after discovery of the alleged error or injustice" to apply to the BCNR for correction of their records. Therefore, plaintiffs will not have lost their right to seek review before the BCNR by prosecuting this suit.

■■■■ We agree with the Fifth Circuit that ordinarily "a plaintiff challenging an administrative military discharge will find the doors of the federal courthouse closed pending exhaustion of available administrative remedies." Hodges v. Callaway, supra 499 F.2d at 420.[6] Indeed plaintiffs concede that if discharge for active homosexuality is not mandatory under the regulations, then they must exhaust their right to appear before the BCNR before seeking judicial relief in the federal courts. We agree.

Plaintiffs maintain, however, that the regulations, coupled with the Secretary of the Navy's Instruction on homosexuals, require the discharge of active homosexuals like plaintiffs. They argue that in the face of such a clear-cut policy this Court should not forestall an adjudication of the important constitutional questions by ordering an administrative appeal, the result of which is allegedly preordained by Navy policy. If plaintiffs are correct about the fruitlessness of an appeal to the BCNR, there is ample authority to support their contention that exhaustion is improper. See Hodges v. Callaway, supra 499 F.2d at 420; Scott v. Schlesinger, 498 F.2d 1093, 1098 (5th Cir. 1974); Dooley v. Ploger, 491 F.2d 608 (4th Cir. 1974); L. Jaffe, Judicial Control of Administrative Action, 426–432 (1965); and Lunding, Judicial Review of Military Administrative Discharges, 83 Yale L.J. 33, 70–71 (1973). The defendants, on the other hand, assert that an order to exhaust would not merely be a useless gesture because there is room under the regulations for the use of discretion in individual cases of homosexual conduct.

Both sides present arguments to support their positions. Plaintiffs rely principally on the allegedly mandatory language of SECNAVINST 1900.9A as incorporated into Regulation 3420220. (See full texts thereof, supra.) Specifically, plaintiffs point to the regulation's parenthetical reference to Instruction 1900.9A for "controlling policy and additional action required" (emphasis added). The policy thus referred to contains the following allegedly mandatory language:

> "Members involved in homosexuality are military liabilities who cannot be tolerated in a military organization. * * * [C]ommanding officers should be keenly aware that members involved in homosexual acts are security and reliability risks who discredit themselves and the naval service by their homosexual conduct. Their prompt separation is essential" (emphasis added).

Plaintiffs also argue that since the BCNR can only recommend action to the Secretary of the Navy and since the Secretary of the Navy's own Instruction clearly defines his view, further intraservice appeal is useless.[7]

---

**4.** See McCurdy v. Zuchert, 359 F.2d 491, 494 (5th Cir. 1966), certiorari denied, 385 U.S. 903, 87 S.Ct. 212, 17 L.Ed.2d 133; Note, Federal Court Review of Decisions of Military Tribunals, 40 U.Cincinnati L.Rev. 569, 573–574 (1971).

**5.** See Hertzog v. United States, 167 Ct.Cl. 377 (1964); Eicks v. United States, 172 F.Supp. 445, 145 Ct.Cl. 522 (1959); and Everett, supra note 1, at 64–65.

**6.** See also Scott v. Schlesinger, 498 F.2d 1093, 1095–1099 (5th Cir. 1974); Dooley v. Ploger, 491 F.2d 608, 611–615 (4th Cir. 1974); Anderson v. MacKenzie, 306 F.2d 248, 250 (9th Cir. 1962); Reed v. Franke, 297 F.2d 17, 26–27 (4th Cir. 1961); Michaelson v. Herren, 242 F.2d 693, 696 (2d Cir. 1957); Bolger v. Marshall, 90 U.S.App.D.C. 30, 193 F.2d 37, 39 (1951); Benson v. Holloway, 312 F.Supp. 40 (D.Neb.1970). But see Sims v. Fox, 492 F.2d 1088 (5th Cir. 1974).

**7.** But see Hodges v. Callaway, 499 F.2d 417, 422–423 (5th Cir. 1974).

The defendants take the position throughout their brief and argument that the regulation does not require mandatory discharge of homosexuals. Defendants also rely on Regulation 3420220 in support of their position. Of course, defendants emphasize different language than plaintiffs rely upon. They note that the regulation states that "Members *may* be recommended for discharge * * *" (emphasis added) and not "must" or "shall" be so recommended. They assert that the Secretary of the Navy's Instruction, while strongly worded, does not have the force of a regulation. The fact that one member of the Field Board recommended retention of plaintiffs is also asserted as proof that discharge is non-mandatory.

Plaintiffs have already been discharged, so that they cannot be spared this trauma even by an immediate favorable decision on the merits by this Court. If plaintiffs resort to the BCNR and if the BCNR decides in plaintiffs' favor and the Secretary of the Navy follows the BCNR's recommendation, plaintiffs can be fully reinstated and awarded back pay. Should plaintiffs be unsuccessful before the BCNR, they can return to the federal courts to have their claim adjudicated. Ashe v. McNamara, 355 F.2d 277, 281 (1st Cir. 1965). The harm that would be caused by a decision of this Court ordering exhaustion is, therefore, minimal.

Requiring exhaustion would also give the Navy an opportunity to adopt a narrowing construction of its regulation. This is appropriate even if the meaning of the regulation appears reasonably clear to us, since the Secretary of Defense, who is a party to this proceeding, has represented to the Court, through his counsel, that the regulation does not mandate discharge whenever homosexuality is proved. As the Third Circuit has observed, " * * * the primary authority for the interpretation of such regulations lies within the Navy's own appellate system." Nelson v. Miller, 373 F.2d 474, 480 (3d Cir. 1967). The possibility that a narrow construction is approrpiate is supported by a comment of the senior member of the Field Board when he was being examined on voir dire by counsel for the plaintiffs[8] and also by the fact that another member of the panel actually voted against discharge in this case. The report of the Field Board is of little aid in discerning the Navy's position.[9] The BCNR has the power to develop further the record in this case and to explore the position of the Navy regarding the discharge of homosexuals (32 CFR § 723.6(a)(2)). Finally, we are mindful of the well-established and sound policy in the federal courts which seeks to avoid premature decisions of constitutional questions such as those raised in plaintiffs' complaint.[10]

In view of all of these factors, while we sympathize with the plight of the district court faced with the exhaustion issue in these difficult circumstances, we believe that this suit should have been dismissed without prejudice pending the exhaustion of plaintiffs' appeal to the BCNR. Beard v. Stahr, 370 U.S. 41, 82 S.Ct. 1105, 8 L.Ed.2d 321 (per curiam). Of course, in so ordering we express no opinion on the merits of plaintiffs' claim nor do we hold that the regulations regarding the discharge of active homosexuals are necessarily non-mandatory.

Vacated and remanded with instructions to dismiss the amended complaint without prejudice.

8. The attitudes of the senior member of the Field Board were explored in a lengthy colloquy between counsel for plaintiffs and the senior member at voir dire. The senior member indicated that under some circumstances he would not feel compelled to recommend discharge for commission of homosexual acts.

9. The "Report of Field Board Officers" in plaintiffs' case contains under "Findings of the Board" only a check-mark in the blank signifying that plaintiffs "Committed homosexual acts." Two other checks signify the Field Board's recommendation that plaintiffs be discharged and that the discharge be a general one under honorable conditions. One Board member penned in her one-sentence dissent quoted *supra*.

10. See generally, Rescue Army v. Municipal Court of Los Angeles, 331 U.S. 549, 574–585, 67 S.Ct. 1409, 91 L.Ed. 1666; Alma Motor Co. v. Timken Detroit Axle Co., 329 U.S. 129, 136, 67 S.Ct. 231, 91 L.Ed. 128; and Aircraft and Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 763, 67 S.Ct. 1493, 91 L.Ed. 1796.