Marie Von HOFFBURG,
Plaintiff-Appellant,

v.

Clifford ALEXANDER, etc., et al.,
Defendants-Appellees.

No. 77-3519.

United States Court of Appeals,
Fifth Circuit.

April 14, 1980.

Dees, Jr., John L. Carroll, Montgomery, Ala., for plaintiff-appellant.

Alfred Mollin, Atty., Civil Div., Dept. of Justice, Allen H. Sachsel, Robert L. Brittigan, Major JAGC, Litigation Div., Office of Judge Advocate Gen., Washington, D. C., for defendants-appellees.

Before TUTTLE, FAY and THOMAS A. CLARK, Circuit Judges.

FAY, Circuit Judge:

Plaintiff Marie Von Hoffburg was honorably discharged from the United States Army because of her alleged homosexual tendencies. Just prior to her discharge, she instituted this action against the Secretary of the Army and others, seeking a declaratory judgment, injunctive relief and monetary damages. The United States District Court for the Middle District of Alabama dismissed the complaint without prejudice because plaintiff had failed to exhaust her administrative remedies.

Plaintiff now appeals the dismissal of her action, claiming that exhaustion of administrative remedies is futile in this case, and that the available administrative procedures and remedies are inadequate to provide her the relief she seeks.

We hold that plaintiff's case does not fit within the futility exception to the administrative exhaustion requirement. We affirm the dismissal without prejudice of plaintiff's claims for declaratory and injunctive relief because those claims should be reviewed, in the first instance, by the military's own internal administrative system. We reverse, however, the dismissal of plaintiff's claim for monetary damages, since such relief is not within the scope of remedies which the Army is empowered to award. We direct the district court to vacate the order of dismissal of the money damage claim and to hold the cause in abeyance until plaintiff has completed the administrative appeal of her other claims.

H. Christopher Coates, Atlanta, Ga., Laughlin McDonald, Neil Bradley, Morris

## I. The Facts

Plaintiff Marie L. Von Hoffburg[1] enlisted in the United States Army on January 2, 1975 for a term of three years. During her first two years of active duty, plaintiff received two promotions and established a good military record. On November 11, 1976 plaintiff was issued a marriage license and was married to Kristian L. Von Hoffburg, a female-to-male transsexual, by a probate judge in Coffee County, Alabama.[2] Kristian Von Hoffburg was formerly a member of the United States Army under the name of Linda Louise Bowers,[3] and his[4] military records reflect that he was a female both at the time of his enlistment in 1974 and the time of his discharge in 1975.

After her marriage, plaintiff applied for and was granted Basic Allowance for Quarters (BAQ) at the rate available to married individuals. On January 24, 1977 personnel in the Identification Card Section of the Office of the Adjutant General, Fort Rucker, Alabama, reported to the Fort Rucker Criminal Investigation Division (CID) that an individual previously known as Linda Bowers had obtained a dependent military identification card as the dependent husband of the plaintiff. Since both the plaintiff and Linda Bowers were known to be female, CID immediately commenced an investigation to determine if plaintiff had committed any criminal act with respect to her application for BAQ payments. Defendants Lawrence E. Ingold and William Faircloth, special agents of the CID, went to plaintiff's place of duty, placed plaintiff under apprehension, and searched her purse. Plaintiff was then transported to the CID field office where defendant Ingold conducted an additional search and seized from plaintiff's purse a letter written by Kristian Von Hoffburg to plaintiff's mother. Plaintiff was subsequently released from custody.

As a result of the CID's investigation, the Staff Judge Advocate[5] issued a memorandum dated March 31, 1977 advising that plaintiff's marriage to Kristian Von Hoffburg was a nullity, that plaintiff could be administratively eliminated from the Army, and that plaintiff's BAQ payments should be terminated, with prior payments to be collected out of her pay. Shortly thereafter, on April 4, plaintiff's company commander, defendant Charles L. Goldman, terminated plaintiff's basic allowance for quarters. On April 6, 1977 defendant Faircloth arrested the plaintiff, searched her person, and subsequently released her from custody. The following week, on April 13, plaintiff applied to her commanding officer to have her named changed on Army records from Marie L. Sode to Marie L. Von Hoffburg. The application was denied the same day.

The events of April, 1977 culminated with company commander Goldman's recommendation that plaintiff be discharged from the Army in accordance with paragraph 13–5b(5) of Army Regulation (AR) 635–200.[6]

---

1. Plaintiff's maiden name is Marie L. Sode.

2. There is no evidence that the judge performing the marriage was aware of Kristian Von Hoffburg's transsexual status or biological female gender at the time of the ceremony. To our knowledge, the validity of the marriage has not been challenged in any state court.

3. Linda Louise Bowers' name was changed to Kristian L. Von Hoffburg by order of an Alabama circuit court judge on December 2, 1975.

4. Although defendants contend that Kristian Von Hoffburg is a biological female, for purposes of clarity we will use masculine pronouns or the name Von Hoffburg to refer to him. We do not know, factually, whether Kristian Von Hoffburg is a biological female, or a biological male, or both.

5. Defendant George S. Harrington, Jr. is the Staff Judge Advocate of the First Aviation Brigade.

6. The relevant portions of AR 635–200, including paragraph 13–5b(5), provide:

 13–5. *Applicability.* An individual is subject to separation under the provision of this chapter when one or more of the following conditions exist:

 a. *Unfitness.*

 \*　\*　\*　\*　\*　\*

 (7) *Homosexual acts.* Homosexual acts are bodily contact between persons of the same sex, actively undertaken or passively permitted by either or both, with the intent of obtaining or giving sexual gratification, or any proposal, solicitation, or attempt to perform such an act. Individuals who have been in-

Plaintiff's brigade commander, defendant G. F. Powers, convened an administrative elimination board of five officers to determine whether plaintiff should be discharged on grounds of homosexual tendencies. After several days of hearings in June, 1977 the board recommended plaintiff's discharge,[7] and on July 20, 1977 plaintiff was honorably discharged from the United States Army.

Following her discharge from the Army, Marie Von Hoffburg made no application for review by the Army Board for Correction of Military Records (ABCMR). Instead, she filed suit in district court seeking a declaratory judgment that the Army regulation under which she was discharged is unconstitutionally vague and, as applied to her, is an unconstitutional abridgment of her rights to freedom of thought and association, privacy, substantive due process, freedom of religion, and freedom from cruel and unusual punishment. Plaintiff asserts that the Army's refusal to recognize her marriage to Kristian Von Hoffburg, the termination of her BAQ payments, and the attempt to discharge her violate her rights guaranteed by article IV, section 1 of the Constitution and 28 U.S.C. §§ 1738 and 1739. She further alleges that the denial of her request to have her name changed on Army records violates her right to liberty guaranteed by the fourth, fifth and ninth amendments, and that the Army's arrests and searches of her and the seizure of her property violated her fourth and fifth amendment rights. Plaintiff seeks to enjoin the Army from failing to recognize her marriage to Kristian Von Hoffburg and from further unlawful arrests and searches. She also seeks to enjoin the Army from permanently discharging her.[8] Finally, plaintiff requests monetary damages in the amount of $50,000.00 to compensate her for the alleged deprivation of her rights.

The district court never reached the merits of plaintiff's case; it granted the defendant's motion for summary judgment and dismissed the complaint on the ground that Marie Von Hoffburg had failed to exhaust her administrative remedies. Memorandum Opinion, Record at 655. Plaintiff now appeals from the district court's order of dismissal. We agree that plaintiff is required to exhaust her administrative remedies prior to obtaining judicial review, and we therefore affirm the dismissal without prejudice of all but one of plaintiff's claims. We reverse the dismissal of plaintiff's claim for monetary damages because it cannot adequately be resolved through administrative channels.

volved in homosexual acts in an apparently isolated episode, stemming solely from immaturity, curiosity, or intoxication normally will not be processed for discharge because of homosexual acts. If other conduct is involved, individuals may be considered for discharge for other reasons set forth in this chapter. . . .

&ast; &ast; &ast; &ast; &ast; &ast;

b. *Unsuitablity.*

&ast; &ast; &ast; &ast; &ast; &ast;

(5) *Homosexuality (homosexual tendencies, desires, or interest but without overt homosexual acts).* Applicable to personnel who have not engaged in a homosexual act during military service, but who have a verified record of preservice homosexual acts. It is also applicable to other cases which do not fall within the purview of a(7) above.

7. Specifically, the elimination board found that plaintiff is a female; that she relates to Kristian L. Von Hoffburg as a male; that she considers Kristian L. Von Hoffburg her husband; and that although Kristian L. Von Hoffburg is a psychological female to male transsexual, Kristian L. Von Hoffburg is a biological female. The board further opined that the intent of AR 635–200 is to define the sex of a person in the biological sense and therefore, the regulation makes no provisions for a husband-wife relationship between biological females. The board by majority vote found that plaintiff was unsuitable for retention in the military service and recommended that she be discharged from the service because of homosexual tendencies. Record at 19.

8. Marie Von Hoffburg filed her complaint on July 19, 1977, one day prior to her honorable discharge from the Army. The district court denied her request for a preliminary injunction to enjoin the Army from discharging her. Record at 21, 22. While this particular form of relief is no longer available to plaintiff, we note that she also seeks such further relief as may be just and proper. Such further relief would presumably include reinstatement, back pay, and correction of plaintiff's military records.

## II. The Exhaustion of Administrative Remedies Doctrine and Its Exceptions

### A. Exhaustion in General

Under the rule requiring exhaustion of administrative remedies prior to judicial review, a party may not ask a court to rule on an adverse administrative determination until he has availed himself of all possible remedies within the agency itself. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The major purpose of the exhaustion doctrine is to prevent the courts from interfering with the administrative process until it has reached a conclusion. In *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) the Supreme Court noted that because the administrative agency is created as a separate entity and invested with certain powers and duties, the courts should not interfere with an agency until it has completed its action or clearly exceeded its jurisdiction. *Id.* at 194, 89 S.Ct. at 1662. The Court enumerated the practical notions of judicial efficiency which are served by the exhaustion doctrine. A complaining party may be successful in vindicating his rights in the administrative process; if he is required to pursue his administrative remedies, the courts may never have to intervene. When administrative channels are bypassed, subsequent judicial review may be hindered by the litigant's failure to allow the agency to make a factual record, exercise its discretion, or apply its expertise. In addition, notions of administrative autonomy require that an agency be given the opportunity to discover and correct its own errors before a court is called to render judgment. Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures. 395 U.S. at 194–95, 89 S.Ct. at 1662–1663.

### B. Exhaustion in the Military Context

The exhaustion doctrine has been applied with some irregularity in decisions of the various circuits;[9] however, this court has consistently held that a plaintiff challenging an administrative military discharge will find the doors of the federal courthouse closed pending exhaustion of available administrative remedies. *Hodges v. Callaway*, 499 F.2d 417 (5th Cir. 1974); *accord, Davis v. Secretary of the Army*, 440 F.2d 817 (5th Cir. 1971); *Stanford v. United States*, 413 F.2d 1048 (5th Cir. 1969); *Tuggle v. Brown*, 362 F.2d 801 (5th Cir.), *cert. denied*, 385 U.S. 941, 87 S.Ct. 311, 17 L.Ed.2d 220 (1966); *McCurdy v. Zuckert*, 359 F.2d 491 (5th Cir.), *cert. denied*, 385 U.S. 903, 87 S.Ct. 212, 17 L.Ed.2d 133 (1966). Although federal courts are not totally barred from barracks and billets, "a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, *and* (b) exhaustion of available intraservice corrective measures." *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971) (emphasis added).

■ The strict application of the exhaustion doctrine in military discharge cases serves to maintain the balance between military authority and the power of federal courts. "[J]udges are not given the task of running the Army." *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). Because the military constitutes a specialized community governed by a separate discipline from that of the civilian, orderly government requires that the judiciary scrupulously avoid interfering with legitimate Army matters. In the military context, the exhaustion requirement promotes the efficient operation of the mili-

---

9. *See* K. Davis, *Administrative Law of the Seventies*, §§ 20.01, 20.07 (1976). Davis notes that "[a]ccording to the holdings, exhaustion of administrative remedies is sometimes required for getting judicial review and sometimes not. The common judicial statement that one must exhaust administrative remedies before going to court is false almost as often as it is true." *Id.* § 20.01 at 446. After discussing some of the contrasting cases, he concludes that they "are not unrepresentative of the state of the law about exhaustion. It is about as unprincipled as any subject on which judicial opinions are written can be." *Id.* § 20.07 at 466.

tary's judicial and administrative systems, allowing the military an opportunity to fully exercise its own expertise and discretion prior to any civilian court review. *Hodges v. Callaway*, 499 F.2d 417 (5th Cir. 1974).

## C. Exceptions to the Exhaustion Requirement

■ Notwithstanding the strong policies favoring the exhaustion of administrative remedies in military cases, several established exceptions to the exhaustion doctrine have been held applicable to military discharge actions. First, only those remedies which provide a genuine opportunity for adequate relief need be exhausted. *Hodges v. Callaway*, 499 F.2d 420–21 (5th Cir. 1974). Second, exhaustion is not required when the petitioner may suffer irreparable injury if he is compelled to pursue his administrative remedies. *Rhodes v. United States*, 574 F.2d 1179, 1181 (5th Cir. 1978). Third, the doctrine will not apply when administrative appeal would be futile (the futility exception). *See generally* 5 B. Mezines, J. Stein, J. Gruff, Administrative Law § 49.02[4] (1979). Finally, exhaustion may not be required, under some precedents, if the plaintiff has raised a substantial constitutional question. *See Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973). *But see Stanford v. United States*, 413 F.2d 1048 (5th Cir. 1969).

In the instant case, plaintiff asserts that it would be an act of utter futility to pursue the administrative remedies available to her. She also claims that the applicable administrative procedures and remedies are manifestly inadequate to provide the relief she seeks. Our task is to determine whether plaintiff's case does in fact fit within the futility or inadequacy exceptions to the exhaustion doctrine, allowing her to circumvent the established administrative procedures for review of military discharges.

## III. Does This Case Fall Within The Exceptions To The Exhaustion Requirement?

Plaintiff's administrative remedy is set forth in 10 U.S.C. § 1552 (1976), which provides that the Secretary of the Army, acting through the Army Board for Correction of Military Records (ABCMR), may correct any military record when he considers it necessary to correct an error or remove an injustice. The implementing regulation requires the ABCMR, composed of civilian employees of the Department of the Army, "to consider all applications properly before it for the purpose of determining the existence of an error or an injustice." 32 C.F.R. § 581.3(b)(2) (1979).

### A. The Futility Exception

■ Plaintiff made no attempt to appeal her discharge to the ABCMR prior to instituting this suit.[10] She contends that such efforts would be futile because of (1) the 1975 Department of Defense (DOD) policy doctrine on homosexuals within the Armed Forces,[11] (2) the Secretary of the Army's

---

**10.** At oral argument counsel for plaintiff-appellant disclosed that a military administrative appeal was filed after the district court dismissed the case. The administrative appeal has been pending for two years; to our knowledge plaintiff has not yet been granted a hearing before the ABCMR.

**11.** In 1975, the Department of Defense issued the following policy directive on homosexuals within the Armed Forces:

Department of Defense policy requires prompt separation of homosexuals. The homosexual person is considered unsuitable for military service and is not permitted to serve in the Armed Forces in any capacity. His presence in a military unit would seriously impair discipline, good order, morale, and security. Further, the Department of Defense has an obligation and responsibility to provide our young men and women in the Armed Forces with the most wholesome and healthful environment possible.

Those individuals who have established homosexual tendencies are discharged administratively as unsuitable for military service. Persons discharged under this purview receive either an honorable or general discharge depending on the quality of their previous military service. Those persons who commit homosexual acts or acts of sexual perversion, when established, may be discharged as unfit for military service and may receive an undesirable discharge. In addition, specific homosexual acts may be a violation of the Uniform Code of Military Justice and, in many cases, the laws of various states.

promulgation of paragraph 13–2e of AR 635–200,[12] and (3) the rejection by the ABCMR of similar challenges.

We find plaintiff's futility arguments unpersuasive. First, there is a viable possibility that the ABCMR may determine that Marie Von Hoffburg is not a "homosexual" within the meaning of the DOD's policy directive. Similarly, the reviewing board may determine that she does not possess the "homosexual tendencies" referred to in paragraphs 13–2e and 13–5b(5) of AR 635–200. Quite possibly, the Army could adopt a construction of the contested regulation which would moot the constitutional question in the case.[13]

Clearly the Army ought to be the primary authority for the interpretation of its own regulations. As the district court pointed out, "[t]o date only an Elimination Board composed of five local officers has heard and evaluated the complex issues here involved. The Army should be given the opportunity to fully evaluate its position and, within those parameters, review the decision of the Elimination Board." Memorandum Opinion, Record at 660. If the outcome of the administrative proceedings is adverse to the plaintiff, and she seeks judicial review, the court will at least have a definitive interpretation of the regulation and an explication of the relevant facts from the highest administrative body in the Army's own appellate system.

> The unique character of the military environment, both ashore and at sea, precludes any possibility of their assimilation within a military organization, under any conditions. Consequently, homosexual persons cannot be accepted into our Armed Forces and must be promptly separated when so identified. Likewise, persons who are found unsuitable for military service because of homosexual or other aberrant tendencies are not accepted into or are discharged from the military service, as appropriate.
>
> This policy is considered to be absolutely essential to the effectiveness of our Armed Forces and to the morale and welfare of its members.

12. On February 25, 1977, the Secretary of the Army promulgated paragraph 13–2e of AR 635–200, which provides:

*Hodges v. Callaway,* 499 F.2d 417, 422 (5th Cir. 1974).

Acknowledging that the ABCMR could afford her some of the relief she seeks, plaintiff points out that even if the board were to find the Army's "homosexual tendencies" regulation unconstitutional or inapplicable to her, and were to recommend her reinstatement to active duty, the Secretary of the Army could overrule that recommendation by providing explicitly stated policy reasons. *See Hodges v. Callaway,* 499 F.2d 417, 423 (5th Cir. 1974). Since the Secretary has already set forth his policy statement by promulgating paragraph 13–2e of AR 635–200, plaintiff argues, it is certain that he would overrule any board recommendation for reinstatement. In essence plaintiff contends that the policy statement contained in paragraph 13–2e binds the Secretary to require discharge regardless of any ABCMR findings. To accept this argument would necessarily render the ABCMR powerless to act on any matter arising under any regulation promulgated by the Secretary of the Army; such a result clearly frustrates the purposes of administrative review by the ABCMR.

[T]o base an exception to the exhaustion requirement on the fact that the final administrative decision is subject to the discretionary power of the Secretary would in effect turn the exhaustion doctrine on its head. Exhaustion is required in part because of the possibility that

> *Policy with respect to homosexuality.* It is Department of the Army policy that homosexuality is incompatible with military service. A person with homosexual tendencies or who commits homosexual acts seriously impairs discipline, good order, morale and security of a military unit. Accordingly, when conditions exist which would support action under either paragraph 13–5a(7) or paragraph 13–5b(5), the member will be processed for discharge.
>
> *See* note 6 *supra* for the text of paragraphs 13–5a(7) and 13–5b(5).

13. Like the court in *Champagne v. Schlesinger,* 506 F.2d 979 (7th Cir. 1974), "we are mindful of the well-established and sound policy in the federal courts which seeks to avoid premature decisions of constitutional questions such as those raised in plaintiff['s] complaint." *Id.* at 984.

administrative review might obviate the need for judicial review. That the administrative process might not have this effect is not usually a reason for bypassing it. And since the Service Secretary always has the final say over decisions by both the DRB and the BCMR, appellant's futility reasoning would mean that exhaustion of intraservice remedies should always be excused. The administrative remedy available to grievants like appellant . . . may offer cold comfort and small consolation, but it is surely beyond our authority to permit the exceptions to the exhaustion doctrine to swallow the rule.

*Hodges v. Callaway*, 499 F.2d 417, 423 (5th Cir. 1974).

Plaintiff further asserts that the ABCMR's rejection of legal challenges similar to hers clearly establishes the futility of an administrative appeal. Plaintiff cites the ABCMR's denial of Miriam Ben-Shalom's petition for the correction of her records as evidence that a challenge to the constitutionality of the "homosexual tendencies, desires or interests" standard of paragraph 13–5b(5) has already been considered and rejected in an administrative appeal under 10 U.S.C. § 1552.[14] *See* Record at 645–54. We note, however, significant distinctions between the two cases. Miriam Ben-Shalom is a self-professed homosexual who has publicly proclaimed her homosexual tendencies. Having brought herself clearly within the proscription of the regulation she was challenging, Ben-Shalom could not effectively present the vagueness argument raised by plaintiff here. The instant case, on the other hand, presents unique questions of fact and regulatory interpretation. Whether Marie Von Hoffburg's alleged marriage and presumed sexual contacts with a biologically female transsexual fall within the provisions of AR 635–200 pertaining to homosexuals is an issue which should be determined by the appropriate authorities after full administrative review. We agree with the district court that the treatment of homosexuals in any branch of the armed forces is a matter of great concern and that the instant case is one in which the military should be given a full opportunity to exercise its own expertise and rectify its own errors. *See Champagne v. Schlesinger*, 506 F.2d 979, 984 (7th Cir. 1974) (exhaustion appropriate even if the meaning of the regulation appears reasonably clear).

### B. The Inadequacy Exception

In addition to arguing that exhaustion of her administrative remedies would be futile, plaintiff asserts that exhaustion is not required in this case because the available administrative remedies are inadequate to grant her the relief she seeks. More specifically, she alleges that neither the ABCMR nor the Secretary of the Army has the authority to award damages to compensate persons who have been illegally arrested or searched by military officials. Plaintiff also points out that no formal discovery or subpoena procedures are available to an applicant before the ABCMR.

 Plaintiff's inadequacy argument has some merit. As we stated in *Hodges v. Callaway*, "a plaintiff obviously need not appeal to the particular DRB [Discharge Review Board] or BCMR [Board for Correction of Military Records] if the relief requested is not within the authority or power of those bodies to grant." 499 F.2d at 420–21. Although the ABCMR can change plaintiff's name on her official military records, restore her basic allowance for quarters, reinstate her to active duty, and expunge all record of her elimination proceeding, it cannot award money damages. *See* 10 U.S.C. § 1552 (1976); 32 C.F.R. § 581.3 (1979). Even if the Army could award such damages, the lack of full discovery and subpoena procedures would make fair liti-

---

**14.** Specialist 4 Miriam Ben-Shalom challenged her discharge from the Army Reserve under the portion of AR 135–176 which allows for the discharge of reserve service members on the basis of "homosexual tendencies, desires or interests." Her constitutional challenges were premised on vagueness grounds, first amendment grounds, and on the basis that homosexuality is an unconstitutional status for punitive administrative purposes.

gation of plaintiff's damage claims impossible.

■ It is clear that appeal to the ABCMR cannot adequately resolve plaintiff's monetary damage claim. Nevertheless, her request for money damages does not preclude application of the exhaustion requirement to her other claims. In *Sanders v. McCrady*, 537 F.2d 1199 (4th Cir. 1976), the plaintiff argued that he should not be required to exhaust his ABCMR remedy because his claim for money damages prevented the ABCMR from affording full relief. The court rejected this argument, stating that the board's inability to grant Sanders full relief by awarding damages and attorney's fees was not a controlling factor in determining whether Sanders was required to resort to his administrative remedies before seeking judicial relief. The court found that the inconvenience to Sanders and the postponement of his opportunity to obtain damages and fees were outweighed by the considerations of efficiency and agency expertise underlying the exhaustion requirement. 537 F.2d at 1201.

We find the reasoning in *Sanders* to be persuasive. All but one of plaintiff's claims for relief can be satisfied by resort to the military's administrative channels. The mere inclusion of a monetary damage claim should not deprive the Army of a chance to review its own rules and regulations prior to judicial intervention. We note, too, the admonition of the second circuit in *Plano v. Baker*, 504 F.2d 595, 599 (2d Cir. 1974), that "a boilerplate claim for damages will not automatically render the administrative

remedy inadequate. Where the relief claimed is the only factor that militates against the application of the exhaustion requirement, the complaint should be carefully scrutinized to ensure that the claim for relief was not asserted for the sole purpose of avoiding the exhaustion rule." While we do not attribute such a motive to the plaintiff before us, we do feel that to allow her to bypass administrative channels because of her monetary damage claim would seriously undermine the utility of the exhaustion of remedies doctrine.

## IV. Conclusion

We hold that plaintiff must exhaust her administrative remedies prior to seeking judicial review of her honorable discharge from the Army. We therefore affirm the district court's dismissal of those claims which can be resolved through the Army's internal administrative procedure.[15]

Plaintiff's claim for monetary damages cannot be satisfied by the available administrative remedies; she must resort to the courts for that form of relief. "Practical notions of judicial efficiency" suggest that court review of plaintiff's damage claim be withheld until the military has completed its review of plaintiff's other claims. *See McKart v. United States*, 395 U.S. 194–95, 89 S.Ct. 1662–1663 (1969). We hesitate, however, to affirm the dismissal of the damage claim for fear of foreclosing plaintiff's opportunity to seek such relief after completion of her military appeal. To avoid the potential bar of a statute of limitations,[16] we remand the case to the district

---

**15.** Several circuits have determined that the availability of post-discharge administrative review does not deprive a court of its jurisdiction over a cause. *See e. g., Nelson v. Miller*, 373 F.2d 474, 479 (3d Cir.), *cert. denied*, 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980 (1967) (reviewing the cases from those circuits which have considered the question). This court, however, has stated that where the exhaustion requirement does apply, the district court has no further jurisdiction over the case until the requirement is satisfied. *Hodges v. Callaway*, 499 F.2d 417, 423–24 (5th Cir. 1974); *McCurdy v. Zuckert*, 359 F.2d 491, 493–95 (5th Cir.), *cert. denied*, 385 U.S. 903, 87 S.Ct. 212, 17 L.Ed.2d 133 (1966).

**16.** Plaintiff's prayer for relief states:
Plaintiff requests that she be awarded monetary damages in the amount of $50,000 to compensate her for the deprivation of her rights guaranteed by Article IV, § 1 and the First, Fourth, Fifth, Eighth and Ninth Amendments of the Constitution of the United States and 28 U.S.C. §§ 1738 and 1739. Record at 10. The complaint does not disclose plaintiff's theory of damage recovery, nor does it indicate whether her claim is against the defendants in their official or their individual capacities. Because we do not know the basis of the damage claim, we have no idea whether it could be barred by any particular statute of limitation. By instructing the district court to

court with directions to vacate the order of dismissal of the claim for monetary damages. We further direct the court to hold the claim in abeyance pending the administrative resolution of plaintiff's remaining claims.[17] *See Concordia v. United States Postal Service,* 581 F.2d 439, 444 (5th Cir. 1978).

AFFIRMED IN PART; REVERSED AND REMANDED IN PART WITH DIRECTIONS.

hold the claim in abeyance, we eliminate needless guessing, and if we have erred, it is on the side of caution.

17. Although "practical notions of judicial efficiency" dictate that plaintiff's damage claim be held in abeyance, we are concerned about the delay and inconvenience which this procedure may entail. At oral argument counsel for defendant-appellee indicated that a hearing before the ABCMR was scheduled for January 9, 1980, and that a decision would follow within two or three months. We do not know whether this hearing has taken place, or whether one is currently scheduled. In view of the fact that plaintiff's case has already been pending before the ABCMR for two years, we feel that some time limit should be placed on our stay of plaintiff's claim for damages. We therefore place a July 1, 1980 expiration date on our order to hold plaintiff's claim in abeyance. If the ABCMR has not rendered a decision in plaintiff's case by that date, the district court should set down plaintiff's damage claim for trial at the earliest convenient time.