**Dan Hubert PEAVY, Plaintiff-Appellant,**

v.

**John W. WARNER, Secretary of the Navy, and Captain Dean Webster, Commanding Officer, Naval Air Station, Albany, Georgia, Defendants-Appellees.**

No. 73-3718
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 8, 1974.

Joseph M. Beck, George B. Haley, Jr., Atlanta, Ga., Jesse W. Walters, Albany, Ga., for plaintiff-appellant.

Elliot L. Richardson, U. S. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., William J. Schloth, U. S. Atty., Earl W. Carson, Jr., Asst. U. S. Atty., Macon, Ga., for defendants-appellees.

* Rule 18, 5th Cir., Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5th Cir., 1970, 431 F.2d 409, Part I.

Before WISDOM, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

Peavy appeals from the district court's denial of his writ of habeas corpus in which he sought cancellation of his two year enlistment extension in the Navy. Concluding that the court below applied the wrong standard of review and seemingly failed to make findings as to the most important aspect of Peavy's claim, we reverse and remand for further proceedings.

October 20, 1969, Peavy joined the Navy. On November 6, 1969 in exchange for advanced training in a technical field, Peavy agreed to extend his original four year enlistment for two additional years. The relevant clause of Peavy's extension agreement provided:

> I understand that this Extension Agreement becomes binding upon successful completion of basic training (Phase I) and *upon enrollment in advanced training* (Phase II) and thereafter may not be cancelled except. . . . (emphasis added)

Peavy testified that after the Navy assigned him to a type of advanced training other than his first choice[1] but before enrollment in the training program he attempted to secure information from various sources including Naval personnel officers on the manner in which to cancel the extension agreement. Peavy stated that the sources answered uniformly—impossible. The Navy now concedes that the contract did provide for cancellation prior to enrollment in advanced training.

Immediately before enrollment in advanced training Peavy executed an "automatic advancement agreement" that purported to make the extension agreement binding. Peavy contended that he executed the advancement agreement and accepted the concomitant promotion to E-4 because he was faced with no other choice. Both a Naval personnel officer and a Naval legal officer advised him at that time that he could not cancel the extension, thus the automatic advancement agreement was immaterial.

Later in his tour of duty, Peavy submitted formal requests for cancellation to the Chief of Naval Personnel and to the Board of Correction of Naval Records. Naval Personnel denied the cancellation saying that Peavy had received the training and personnel were not normally disenrolled at their own request. The letter of denial failed to address Peavy's contention that he was denied the option to cancel the extension prior to enrollment. The Board also denied Peavy's request and failed to address the issue of the option to cancel prior to enrollment.

The district court concluded that both Peavy's extension and the Navy's subsequent refusals to cancel comported with regulations. The court also relied in denying Peavy's habeas corpus on the automatic advancement agreement and the benefits (training, promotion, pay raise) which flowed from the extension agreement.

 The federal courts have habeas corpus jurisdiction over claims of unlawful detention by members of the military, In re Kelly, 401 F.2d 211 (5th Cir. 1968). The standard of review varies with the military decision or action complained of. Habeas corpus review of convictions by court-martial is limited to questions of jurisdiction, O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and the limited function of determining whether the military has given fair consideration to petitioners' claims, Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). A challenge to a discretionary

---

[1]. Peavy stated that at the time he extended his enlistment the recruit counselor represented to Peavy that he could be 99% assured of assignment to his first choice of training. Whether that representation actually was made and whether it was a misrepresentation is not essential in light of the contract language which contemplated an opportunity for cancellation prior to enrollment in any advanced training.

decision will be reviewed under an abuse of discretion or failure to exercise discretion standard. Nixon v. Secretary of Navy, 422 F.2d 934 (2d Cir. 1970); Bluth v. Laird, 435 F.2d 1065 (4th Cir. 1970). Discretionary decisions on conscientious-objector applications are reviewed under the same standards as are decisions by draft boards—the "any basis in fact for the decision" test, Pitcher v. Laird, 421 F.2d 1272 (5th Cir. 1970); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968). In reviewing claims that a branch of the military failed to comply with its own regulations the courts will look simply for a showing by the claimant that the regulation was not followed and for a showing of prejudice to the petitioner. Friedberg v. Resor, 453 F.2d 935 (2d Cir. 1971); Nixon v. Secretary of Navy, *supra*; Bluth v. Laird, *supra*.[2] Finally, claims that enlistment contracts are invalid or have been breached are decided under traditional notions of contract law. Shelton v. Brunson, 465 F.2d 144 (5th Cir. 1972); Johnson v. Chafee, 469 F.2d 1216 (9th Cir. 1972); Chalfant v. Laird, 420 F.2d 945 (9th Cir. 1969).

If Peavy's enrollment in advanced training was valid and binding, Naval regulations precluded cancellation of his two-year extension. The essence of Peavy's claim is that the Navy breached the original extension agreement by failing to allow him to cancel the extension before enrollment in advanced training. Additionally, he insists that the automatic advancement agreement (referred to by the district court as a reaffirmation of the extension agreement) was invalid because he was induced to execute it by the misrepresentations of Navy authorities. The Navy concedes that Peavy could have cancelled the original extension prior to enrollment, but contends that Peavy made no cognizable efforts to cancel it and that the executed automatic advancement agreement conclusively showed that Peavy intended to fulfill the extension agreement and ne-

gates his contention that he sought to cancel the extension.

 The district court either failed to consider or failed to make findings regarding this contractual dispute. Although evidence in the record—Peavy's testimony and letters written by Peavy's father corroborating Peavy's statements—supports Peavy's position, we cannot say as a matter of law that Peavy sought cancellation and that the Navy invalidly refused or ignored his requests during the period in which it is now conceded the extension could have been cancelled. Therefore, on remand the district court should make appropriate findings. If the court concludes: (1) that the Navy refused Peavy's requests for cancellation; or (2) that the Navy through misrepresentation induced Peavy to execute the "reaffirmation" agreement, then he is entitled to cancellation of the remainder of his extension.

Reversed and remanded.

---

2. Of course, an affected individual may challenge the constitutionality of military regulations and procedures, Sims v. Fox, 492 F.

2d 1088 (5th Cir. 1974) [No. 73–2707, April 19, 1974].