**Neil L. FERRELL, Petitioner-Appellant,**

v.

**SECRETARY OF DEFENSE, Secretary of the Navy and Commanding Officer, NAS, Corpus Christi, Texas, Respondents-Appellees.**

**No. 81–2063**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 7, 1981.

Joel E. Bair, Corpus Christi, Tex., for petitioner-appellant.

Robert Darden, Asst. U.S. Atty., Houston, Tex., for respondents-appellees.

Before CHARLES CLARK, Chief Judge, RUBIN and SAM D. JOHNSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Seeking honorable discharge from his military commitment, appellant Ferrell filed a federal habeas petition alleging that the Navy had breached his enlistment contract by not placing him in the Active Mariner Apprenticeship Training Program ("Mariner Program"). The pertinent facts being undisputed, we affirm the district court's denial of relief because Ferrell has not shown this breach of his enlistment contract to have been a material one entitling him to rescind his enlistment.

On June 30, 1978, Ferrell enlisted in the United States Naval Reserve ("USNR") under the Mariner Program. After a period of delayed entry, Ferrell was to serve three years of active duty, two years of active reserve and one year of inactive reserve. The Mariner Program provided two weeks of "apprenticeship training" after completion of boot camp, a chance, after initial assignment to a Naval Unit, to "look at all the jobs available in the Navy" and an opportunity to apply for one of those jobs. The Navy was not, however, under any obligation to give the applicant the job he selected.

Approximately six months after his enlistment, Ferrell was called to duty. Upon his arrival at the induction center, Ferrell was erroneously told that the Mariner Program no longer existed and that he had no choice but to accept a "straight" (*i. e.,* no options), four-year term of active duty in the regular United States Navy ("USN").[1] Having no reason (or ability) to question the correctness of this information, Ferrell agreed to be honorably discharged from his original USNR enlistment and signed the four-year USN enlistment. Under this second enlistment, Ferrell was neither entitled to nor received the benefits of the Mariner Program.

When Ferrell discovered that he had been misinformed when he signed the USN enlistment, he petitioned the Board for Cor-

---

1. The Mariner Program had not in fact been terminated at the time Ferrell reported for duty; there were, however, no open billets in the program at that time. It appears from the record that Ferrell therefore had the option of *either* signing the four-year USN enlistment *or* waiting for a billet to open up in the Mariner Program.

rection of Naval Records ("BCNR") to correct his records to show that he was serving three years of active duty pursuant to his original USNR enlistment. He later amended his petition to request that he be discharged from the Navy altogether.

The BCNR found that Ferrell had not been "properly counseled at the time he signed the [four-year] USN contract," but refused to grant him a discharge. Instead, it voided the USN contract and "reinstated" his original USNR enlistment. In doing so, however, the BCNR failed to take account of the fact that Ferrell had never been afforded the benefits of the Mariner Program.

Having failed to obtain a discharge after thus exhausting the available administrative remedies, Ferrell filed a petition for a writ of habeas corpus in federal district court. After an evidentiary hearing, the Magistrate appointed to hear the case recommended that the writ be granted. The district judge, however, declined to follow this recommendation and entered an order denying the petition. Ferrell appeals from this judgment. His basic argument is that the BCNR's reinstatement of his original USNR enlistment contract without also allowing him to participate in the Mariner Program constitutes a material breach of that contract entitling him to rescind it. We do not agree that the breach was material.

▪ The general standard of review of military "correction board" decisions, *see generally* 10 U.S.C. § 1552, is summarized in *Sanders v. United States*, 594 F.2d 804 (Ct. Cl.1979):

> Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's decision unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary or capricious, or in bad faith, or unsupported by substantial evidence or contrary to law, regulation, or mandatory published procedure of a substantial nature by which plaintiff has been seriously prejudiced
> . . . .

594 F.2d at 811. Claims that enlistment contracts are invalid or have been breached are decided according to traditional notions of contract law. *Peavy v. Warner*, 493 F.2d 748, 750 (5th Cir. 1974). *See also In re Grimley*, 137 U.S. 147, 151, 11 S.Ct. 54, 55, 34 L.Ed. 636, 638 (1890); *Pence v. Brown*, 627 F.2d 872, 874 (8th Cir. 1980); *Shelton v. Brunson*, 465 F.2d 144, 147 (5th Cir. 1972). Therefore, under *Sanders* standards, Ferrell is entitled to relief only if he can show that the BCNR decision was "contrary to law."

According to the original Restatement of Contracts, if the failure of one party to perform part of a contract is so material that it results in the other party not receiving substantially what he bargained for, the duty of the injured party is discharged and he is, thereby, wholly excused from carrying out his undertaking. *See* Restatement of Contracts §§ 274, 397 (1932). If, on the other hand, the failure to perform is not material, the injured party retains his duty to render his performance. *See id.* § 274(1). There is still a breach of contract, but the innocent party must recoup his losses, if any, for such an immaterial breach through an action for damages or one of the other procedural devices designed for that purpose.[2] *See, e. g., Jacob & Youngs, Inc. v. Kent*, 230 N.Y. 239, 129 N.E. 889 (1921) (Cardozo, J.); *cf.* Restatement of Contracts §§ 274–76 (1932). The provisions of the new Restatement in this area are essentially the same. *See* Restatement (Second) of Contracts §§ 235–38, 241 (1979).

▪ The determination of the materiality of a breach of contract is not, of course, susceptible to the application of mechanical rules, but, as noted, the general inquiry is whether the injured party has received substantially what he bargained for in spite of the breach. *See* Restatement (Second) of Contracts § 241 (1979); Restatement of Contracts § 275 (1932) (both listing factors

---

2. Ferrell has not at any time requested damages for the Navy's breach of his enlistment contract. Such a claim, if for $10,000 or less, could have been brought in the district court. 28 U.S.C. § 1346. We express no opinion concerning his right to recover damages.

relevant to the determination of materiality). We turn to an examination of Ferrell's testimony at the hearing below to determine whether the Navy's failure to put Ferrell through the Mariner Program deprived him of a substantial part of his bargain.

 Ferrell testified that he enlisted mainly to finish his active duty obligation before entering college[3] and to have an opportunity to travel. When asked why he had chosen the Mariner Program out of the many available to him, he responded, "Well, that was the one [the recruiting officer] showed me, and that was all right with me."

Furthermore, even if Ferrell could have shown that he was more specifically interested in the Mariner Program than his testimony suggests he actually was, the program itself seems to have offered few, if any, real benefits.[4] To recall, the Mariner Program, reduced to its essentials, provided two weeks of "apprenticeship training" at the end of basic boot camp, and an opportunity, after a short period for observation, to indicate a *preference* for a particular job, which such indication might or might not be honored.[5] It can hardly be said that the opportunity to participate in the limited Mariner Program constituted a significant part of the bargain struck between Ferrell and the Navy.

Therefore, viewing the question either as one of Ferrell's subjective expectations or as one of the objective value of the program, we conclude that the Navy's failure to put Ferrell through the Mariner Program can not be characterized as a material breach of Ferrell's USNR enlistment entitling him to rescind it. Accordingly, the

order of the district court dismissing Ferrell's petition for a writ of habeas corpus is AFFIRMED.

---

3. Ferrell seems to have believed that he had to fulfill some sort of active duty obligation. It is unclear from the record what this belief was based upon, but the fact that it may have been mistaken is not here relevant.

4. One exception to this statement is hinted at in the record. It appears to have been the case that the only way one enlisting in the USNR could obligate himself for only three years of active duty, as opposed to four or more, was by enlisting under the Mariner Program. Since

the BCNR reinstated Ferrell's three-year active duty commitment, even though he had not gone through the program, he has in any event received this benefit.

5. Ferrell testified that he was aware at all relevant times of the Navy's option not to honor these requests for specific jobs.