**Andrew J. WOODRICK,**
**Petitioner-Appellee,**

v.

**Captain Peter B. HUNGERFORD, U.S.**
**A.F., et al., Respondents-Appellants.**

No. 85–2567.

United States Court of Appeals,
Fifth Circuit.

Oct. 1, 1986.

John P. Schnitker, Atty., Appellate Staff,
John F. Cordes, Atty., U.S. Dept. of Justice, Major James M. Kinsella, Gen. Litigation Div., Office of The Judge Advocate
Gen., Washington, D.C., for respondents-appellants.

John M. Economidy, San Antonio, Tex.,
for petitioner-appellee.

Before GEE, POLITZ, and GARWOOD,
Circuit Judges.

GEE, Circuit Judge:

In the spring of 1980, Andrew Woodrick,
a student at Memphis State University, discussed with representatives of the on-campus Air Force Reserve Officer Training
Corps (AFROTC) program the possibility of
his entering that program with the ultimate
goal of earning an officer's commission and
his wings as a pilot. In 1980, as a result of
these discussions, Woodrick underwent a
Department of Defense physical examina-

tion for the purpose of determining whether he was medically qualified for entry into a pilot training program upon receiving a commission. That examination determined that he was so qualified, and specifically found that he had passed the color vision test.

Woodrick then applied for and was accepted into the two-year AFROTC program. In September 1981 he executed three documents: (1) an AFROTC contract; (2) an enlistment/reenlistment document; and (3) a statement of understanding. The contract required Woodrick to enter a professional officer course as a cadet in ROTC and to accept a commission in the Air Force Reserve upon receipt of his baccalaureate degree and completion of the AFROTC commissioning requirements. The contract noted that Woodrick was designated a "line officer" candidate, with a planned commissioning date of May 1983, and that he was qualified to be a pilot candidate.

Under the enlistment document, Woodrick enlisted in the Air Force Reserve for a minimum of six years, and the statement of understanding provided that he could be ordered to active duty in his enlisted grade for a period of two years if he was

discontinued from the AFROTC professional officer course for any of the following reasons:

(1) Indifference to training,

(2) Disciplinary reasons,

(3) Breach or anticipatory breach of the terms of the contractual agreement,

(4) Declining to accept a commission.

Pursuant to his contractual obligations, Woodrick took an oath as an enlisted man in the Air Force Reserve, enrolled in the AFROTC unit at Memphis State as a cadet in the fall semester of 1981, and was paid a monthly stipend as his ROTC contract provided. The 1981–82 school year apparently went by without any problems.

In October 1982, during the fall semester of his senior year (and second and final year of AFROTC), Woodrick underwent a precommissioning physical. The report of that examination stated that Woodrick failed the color vision test, which, if true, disqualified him from flying. Woodrick was advised, however, that he was not medically disqualified from flying until the physical had been reviewed by the Surgeon General's office at the Headquarters Air Training Command. That office requested that an Air Force flight surgeon re-evaluate his color vision and that Woodrick retake the test.

Woodrick, however, upon learning the results of his physical, stopped attending AFROTC classes and did not retake the color vision test. On January 6, 1983, an investigation was ordered to determine if Woodrick should be expelled from AFROTC for cause, that is, his failure to attend classes. Woodrick was advised of the possible consequences of the investigation (including possible call to active duty as an enlisted man), and given the opportunity to cross-examine witnesses and present evidence on his own behalf. The investigating officers concluded their task with a recommendation that Woodrick be expelled from AFROTC for breach of his contract. The ROTC commander concurred, and Woodrick was dropped from the unit. Woodrick was then ordered to active duty, in enlisted status, effective May 31, 1984.

Woodrick did not report for duty on that date and was declared AWOL. After failing to appear for duty within 30 days, he was classified a deserter. On March 21, 1985, Woodrick was arrested at his home in Nashville by two off-duty civilian police officers who recovered a federal bounty for their efforts. He was handed over to military authorities and transported to Lackland Air Force Base in San Antonio.

Woodrick was kept in detention for 18 days, and then released from confinement but ordered to report to 3731st Personnel Processing Squadron, an administrative holding unit at Lackland. On advice of civilian counsel, Woodrick refused military pay to avoid a constructive enlistment.

Woodrick's commanding officer proceeded with charges of desertion against Woodrick under Article 85 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 885, ordering an investigation into the desertion charges and requesting findings as to whether prosecution of Woodrick before a court-martial was warranted. In the meantime, Woodrick was examined by two Air Force ophthalmologists, both of whom concluded that Woodrick was indeed colorblind, that this defect was likely a congenital one and therefore in existence at the time of his initial examination and later enlistment, and that it was too severe to be waived for pilot qualification purposes.

On April 10, 1985, the day following that of his assignment to the 3731st Squadron, Woodrick's civilian counsel [1] filed a habeas petition in the district court in San Antonio, requesting that Woodrick's enlistment contracts with the Air Force be rescinded on grounds of either fraudulent inducement or mutual mistake and that the Air Force be ordered to grant him an honorable discharge. The government answered the petition and moved to dismiss on the grounds that Woodrick had failed to exhaust his available remedies and that his contract claims were without merit. Woodrick then applied for a temporary restraining order enjoining the respondent from proceeding with the pre court-martial investigation pending disposition of his petition.

The district court referred the matter to a United States Magistrate, who found that the Air Force's statement (on the basis of the preliminary physical in 1980) that Woodrick was medically qualified to be a pilot candidate was a material misrepresentation of fact upon which Woodrick justifiably relied in executing his enlistment agreements and thus that Woodrick's military contracts were subject to rescission. Since the initial contracts were void, the Magistrate reasoned, Woodrick had not enlisted and the Air Force was without jurisdiction

over him. The Magistrate recommended that Woodrick's habeas petition be granted.

The district court, after a de novo review, accepted the Magistrate's findings and recommendations and denied the Air Force's motion to dismiss for lack of jurisdiction. The court reasoned that its interference with the court-martial proceeding was proper, given that that proceeding could not determine the merits of Woodrick's contractual claims.

The court then heard the contractual issues, with the Air Force declining to present evidence on grounds that the court lacked jurisdiction. The order did not, however, require an honorable discharge for Woodrick, presumably because if his initial contracts were void, Woodrick's status never changed and there was no occasion for him to be discharged. The Air Force appeals.

It is important at the outset to understand precisely what relief Woodrick seeks through his habeas application. His petition sought only rescission of the AFROTC and enlistment contracts and his separation, not intervention in the court-martial. Woodrick later filed a motion for a temporary restraining order to enjoin the court-martial proceeding pending a resolution of his contractual claims, but this motion became moot when the Air Force agreed to stay that proceeding pending disposition of the habeas petition.

The parties unnecessarily expend a great deal of energy debating *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975) and the requirements for intervention in a court-martial by a civilian court. The issue here, however, is one of timing: whether the court erred in granting Woodrick's requested relief—rescission of his enlistment contracts and separation from the Air Force—before he had exhausted his intraservice remedies. The court-martial proceeding is immaterial to that question.

---

1. Military judge advocates are prohibited by military directive from seeking habeas relief in federal courts.

This distinction is significant: although the federal courts have habeas corpus jurisdiction over claims of unlawful detention by members of the military, *Peavy v. Warner*, 493 F.2d 748, 749 (5th Cir.1974), the standard of review varies with the military decision or action complained of. *Id.* Habeas corpus review of courts-martial is limited to questions of jurisdiction and to the severely limited function of determining whether the military has given fair consideration to petitioners' claims, *Id.*, whereas claims that enlistment contracts have been breached or are invalid are decided under traditional canons of contract law. *Id.* at 750; *Ferrell v. Secretary of Defense*, 662 F.2d 1179, 1181 (5th Cir. 1981); *Peavy v. Warner, supra*, 493 F.2d at 750; *Shelton v. Brunson*, 465 F.2d 144, 147 (5th Cir.1972). It is clear that exhaustion of administrative remedies is required before a civilian federal court can intervene in the proceedings of a court-martial, *Schlesinger v. Councilman, supra*, 420 U.S. at 758, 95 S.Ct. at 1313. It is not so clear under our precedents that such an exhaustion of administrative remedies must precede the invocation of the Great Writ to rescind an enlistment contract.

We have never directly addressed this question. In *Ferrell v. Secretary of Defense, supra*, where the petitioner had unsuccessfully sought rescission of his contract through the Board of Corrections of Naval Records (BCNR), we denied rescission because the Navy had neither breached its contract nor misrepresented any material fact to induce Ferrell to enlist; whether the BCNR application was a prerequisite to our action was not considered. And in both *Peavy v. Warner* and *Shelton v. Brunson, supra*, we held, without any mention of administrative remedies, that servicemen induced through material misrepresentations to sign enlistment contracts could seek rescission through habeas relief in the federal courts. In neither case does it appear that administrative remedies were sought.

On the other hand, speaking of a serviceman who *objected* to his discharge, we have declared, in sweeping language, that:

a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice correction measures.

*Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir.1971). We followed *Mindes* in *Hodges v. Callaway*, 499 F.2d 417, 419 (5th Cir. 1974) and *Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir.1980). Both, like *Mindes*, were cases where servicemen challenged their discharges through habeas writs in the federal courts; and in each a failure to exhaust administrative remedies resulted in dismissal of the petition. Both cases recognize exceptions to the exhaustion doctrine:

(1) where administrative remedies would be futile, and

(2) where the petitioner might suffer irreparable injury if he is compelled to pursue administrative remedies.

*Von Hoffburg, supra*, 615 F.2d at 638. At least one other circuit, however, has stated that a lesser showing than one of irreparable injury, e.g., mere hardship, is sufficient to invoke the exception. *Seepe v. Dept. of Navy*, 518 F.2d 760, 762 (6th Cir.1975).

[3] We must therefore first determine whether we should apply the exhaustion doctrine of *Mindes, Hodges*, and *Von Hoffburg* to cases such as *Ferrell, Peavy, Shelton* and the one at bar, cases in which servicemen challenge the validity of their enlistment contracts. In addition to the usual reasons for requiring use of established procedures before countenancing a resort to litigation, the need for limiting civil court intervention in internal military affairs weighs strongly in the scales. Among those matters from which even an omnicompetent judiciary[2] should shrink is

2. See N. Glazer, "Towards an Imperial Judiciary," *The American Commonwealth: 1976*, at   104–123 (Basic Books, 1976).

running the military, a task for which we have few resources and even less competence.[3] We therefore hold that where a serviceman seeks to effect a rescission of his enlistment contract by means of the habeas writ in federal court, he must show that he has exhausted all available intraservice remedies. We recognize an exception to this rule, however, where the petitioner is able to demonstrate that pursuit of intraservice remedies would be futile, or would cause him to suffer irreparable harm. We must therefore consider whether Woodrick has established that it would have been futile to pursue the intraservice remedies available to him or that in so doing he would have suffered irreparable injury.

■ The Air Force contends that Woodrick had three remedies available to him: (1) Request for Discharge in Lieu of Trial by Court-Martial Pursuant to Air Force Regulation 39–10; (2) Petition to the Air Force Board of Correction of Military Records (AFBCMR); or (3) a Complaint Against His Commanding Officer for Wrongs Pursuant to Art. 138 of the Uniform Code of Military Justice, 10 U.S.C. § 938.

Under AF Regulation 39–10, Chapter 4, any serviceman subject to trial by court-martial may request a discharge in lieu of trial from his unit commander, who forwards it to the officer exercising special court-martial jurisdiction over the petitioner, who in turn forwards it to the General Court-Martial authority (GCM) for action. Such a request delays court-martial proceedings until final action on the request is taken. The GCM authority is authorized to discharge the petitioner from the Air Force administratively.

The parties strenuously disagree over the significance of a discharge in lieu of court-martial, with Woodrick contending it is a separation under a disgrace and dishonor, and "in effect an acknowledgement that the individual committed all elements of the alleged offense." The Air Force concedes that Woodrick is likely to receive a general discharge or discharge without service characterization, but notes that an honorable discharge is not out of the question. The pertinent regulations require such a discharge to be honorable unless it is pursuant to "an approved sentence of a court-martial" or "approved findings of a board of officers" or the individual concerned "consents" to a less than honorable discharge.

Assuming, arguendo, that anything less than an honorable discharge amounts to an irreparable injury, there has been no showing by Woodrick that this remedy would have been futile, since it is possible that Woodrick could have obtained an honorable discharge through this avenue. Even were the result a dishonorable discharge, relief could still be sought in federal court.

The Air Force argues that Woodrick also had a remedy in the form of a petition for honorable discharge from the AFBCMR. Under 10 U.S.C. § 1552, each branch of the service has established a Board for the Correction of Military Records. These boards are authorized to "correct any military record ... when ... necessary to correct an error or remove an injustice." § 1552(a).

It is not clear that the AFBCMR possesses power to separate Woodrick from the Air Force. In *Pence v. Brown,* 627 F.2d 872 (8th Cir.1980), an officer claimed that a material misrepresentation by the Air Force caused him to sign enlistment contracts. Before invoking the Great Writ in the district court, he applied to the AFBCMR for precisely the same relief that Woodrick seeks: rescission of the contracts and an honorable discharge. The AFBCMR "stated that it did not have the authority to grant him a discharge, an issue the Board thought best suited for a civil court." *Id.* at 875 n. 5. In today's case, however, after the district court granted Woodrick's petition the Air Force submitted an affidavit from the Secretary

---

**3.** Although, as two former sergeants and a former lieutenant, we doubtless possess more competence than your garden-variety panel of judges.

of the Board indicating that it was empowered to grant a discharge.

Assuming, arguendo, that the Corrections Board has the authority to rescind Woodrick's contracts and to discharge him, Woodrick contends that the lengthy process of application to the Board would cause him to suffer irreparable injury because the court-martial proceeding against him could in the meantime proceed. Even so, Woodrick could have petitioned the Board once he learned that he was not medically qualified to fly. Court-martial became a threat only when Woodrick unilaterally ceased to meet his ROTC training obligations. Had the petition to the Board been unsuccessful, the habeas remedy would then be available.

The Air Force finally argues that Woodrick had a remedy under Art. 138 of the UCMJ, 10 U.S.C. § 938. It provides:

> Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon.

Woodrick maintains that Art. 138 does not apply because he was not wronged by his AFROTC unit commander but rather by his initial medical examiners. However, Woodrick rebutted that argument by contending that his ROTC commander had the authority and duty under Air Force Regulation 39–10 to investigate his contractual claims and initiate separation action. The commander, of course, failed to do so, and Woodrick was therefore entitled under Art. 138 to bring the matter to the attention of that officer's superior.

Woodrick also cites USAF Regulation 110–19 § 2a which provides that complaints related to military discipline are not cognizable under the Article 138. However, Woodrick's "complaint" does not relate to military discipline; it relates to his allegedly void enlistment contracts. The Military Courts have recognized the applicability of Art. 138 to enlistment contract rescission claims. *United States v. Imler*, 17 M.J. 1021, 1025 (N.M. C.M.R.1984).

It is clear that Woodrick has thus not shown that pursuing his available intraservice administrative remedies would have been futile. Nor has he shown that he would have suffered irreparable injury in so doing. Accordingly, we REVERSE the district court and VACATE the habeas writ.