Andrew J. WOODRICK, Airman First Class, U.S. Air Force, Petitioner,

v.

Major General Chris O. DIVICH, Commander, Air Force Military Training Center; Colonel Roy D. SHEETZ, Commander, Basic Military Training School; Captain Jessie W. Canaday, Commander, Headquarters Squadron, Basic Military Training School; and Major Frances E. Brunell, Commander, 3708th Basic Military Training School, all Lackland Air Force Base, Texas; and Lieutenant General Charles Cunningham, Jr., Commander, Twelfth Air Force, Bergstrom Air Force Base, Texas, Respondents.

Misc. Dkt. No. 87–10/AF.

U.S. Court of Military Appeals.

June 8, 1987.

For Petitioner: *John M. Economidy*, Esq., San Antonio, Texas (argued).

For Respondents: *Lieutenant Colonel Robert E. Giovagnoni* (argued); *Colonel Joe R. Lamport, Major Lawrence W. Kelly, Captain Marc Van Nuys* (on brief).

*Opinion of the Court*
EVERETT, Chief Judge:

I

Petitioner Woodrick seeks extraordinary relief in the form of an order dismissing court-martial charges against him and directing his discharge from the Air Force. He poses interesting questions as to the relationship between the civilian courts and the military justice system.

The facts, many of which have been recited by the opinion of the Court of Appeals in *Woodrick v. Hungerford*, 800 F.2d 1413 (5th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1972, 94 L.Ed.2d — (1987), need be stated only briefly. In 1980, petitioner, then a student at Memphis State University, discussed entry into the Air Force Reserve Officers Training Corps (AFROTC) program with a view to "earning an officer's commission and" becoming a pilot. He "underwent a ... physical examination" (id.) which "determined that he was [medically] qualified" for entry into pilot training. The examination included a test of his color vision, which he passed.

In September 1981, he entered the two-year AFROTC program and executed the necessary documents. His AFROTC contract noted that Woodrick had "a planned commissioning date of May 1983 and that he was qualified to be a pilot candidate." Under another contract which he executed, petitioner "enlisted in the Air Force Reserve for a minimum of 6 years." A third document acknowledged his understanding "that he could be ordered to active duty" for 2 years in his enlisted status if he were dropped out of the AFROTC professional officer course by reason of "(1) [i]ndifference to training, (2) [d]isciplinary reasons, (3) [b]reach or anticipatory breach of" his contract, or "(4) [d]eclining to accept a commission."

Woodrick was sworn in as an enlisted member of the Air Force Reserve and "enrolled in the AFROTC unit at Memphis State University." Thereafter, he received a monthly stipend pursuant to his AFROTC contract. "In October 1982, during the fall semester of his senior year (and second and final year of AFROTC), Woodrick underwent a precommissioning physical. The report of the examination stated that" he had "failed the color-vision test." Adequate color vision is a prerequisite for pilot training; but apparently it is not required for commissioning as a line officer. However, under the Air Force policy then prevailing, it was likely that Woodrick would have

been allowed to leave the AFROTC program and be separated from the enlisted reserve.

Air Force authorities requested that Woodrick take the color-vision test again. "[H]owever, upon learning the results of his physical" examination, he "stopped attending AFROTC classes and did not retake the ... test. On January 6, 1983, an investigation was ordered to determine if" he "should be expelled from AFROTC" because of "his failure to attend classes"; and he was advised that this investigation might lead to his being ordered "to active duty as an enlisted man." Ultimately, the investigating officers recommended "that Woodrick be expelled from AFROTC for breach of his contract"; and this action was taken. Then petitioner was "ordered to active duty, in enlisted status," for 2 years commencing on May 31, 1984.

Because he failed to "report for duty" as directed, Woodrick was classified as an unauthorized absentee and, after 30 days, was designated a deserter. On March 21, 1985, he was arrested by civilian police officers, turned "over to military authorities, and transported to Lackland Air Force Base in San Antonio." There petitioner was kept in confinement for 18 days. Then he was "released from confinement but ordered to report to ... an administrative holding unit at" the base. "On advice of civilian counsel, Woodrick refused military pay to avoid" the possibility of "a constructive enlistment." 800 F.2d at 1414.

A pretrial investigation under Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832, was initiated as to the charge of desertion, in violation of Article 85, UCMJ, 10 U.S.C. § 885, that had been preferred against Woodrick. Also, at some time, he "was examined by two Air Force ophthalmologists, both of whom concluded that Woodrick was ... color blind" and "that this defect was" probably "congenital"—in which event it had existed when he was initially examined in 1980. The color blindness "was too severe to be waived for pilot" training.

On April 10, 1985, immediately after he had been assigned to the holding unit at Lackland, Woodrick sought a writ of habeas corpus in federal district court seeking his separation from the Air Force. He claimed that when he joined AFROTC and enlisted in the Air Force Reserve, the Air Force had misstated his eligibility for pilot training. According to him, this misrepresentation—whatever its cause—was material because he only was interested in the AFROTC program as a means of becoming a pilot.

The Government moved to dismiss on grounds of failure to exhaust administrative remedies and disputed Woodrick's contract claims. Thereupon, petitioner sought a temporary restraining order to prevent the Air Force from proceeding with the Article 32 investigation and preparations for his trial by court-martial.

A United States Magistrate, to whom the matter was referred, found that, when Woodrick had enlisted in 1981, the Air Force had misrepresented that he was medically qualified for pilot training and that this misrepresentation was material and was reasonably relied on by him to his detriment. The Magistrate concluded that the AFROTC contract and enlistment agreement "were subject to rescission"; that the Air Force lacked jurisdiction over petitioner; and that the petition for writ of habeas corpus should be granted.

"The district court, after a *de novo* review, accepted the Magistrate's findings and recommendations and denied the Air Force's motion to dismiss for" failure to exhaust remedies, concluding that a court-martial "could not determine the merits of" his "contractual claims." It also ruled in Woodrick's favor on his contract claims. 800 F.2d at 1415.

The Government appealed to the Court of Appeals, which held that the District Court should be reversed and "the habeas writ" vacated because of failure to exhaust administrative remedies. *Id.* at 1418. The three remedies which the Court of Appeals believed applicable were: "(1) Request for Discharge in Lieu of Trial by Court-Martial

Pursuant to Air Force Regulation 39–10; (2) Petition to the Air Force Board of Correction of Military Records (AFBCMR); or (3) a Complaint Against His Commanding Officer for Wrongs Pursuant to Art. 138 of the Uniform Code of Military Justice, 10 U.S.C. § 938." *Id.* at 1417.

Woodrick then sought a writ of certiorari from the Supreme Court; and his petition was denied on May 4, 1987. Meanwhile, according to counsel's representations during oral argument and documents filed with the Court thereafter,[1] Woodrick has filed a complaint under Article 138 and an application for relief from the AFBCMR. However, Woodrick does not intend to seek a discharge in lieu of court-martial because, according to his counsel, he believes this would create an unwarranted stigma—especially since he claims that he has been unlawfully ordered to active duty and is not a member of the Armed Services. Because a general court-martial is ready to try the desertion charges against Woodrick, he is now seeking extraordinary relief in this Court. He asked that we issue

a writ of habeas corpus releasing him from military authority, a writ of prohibition restraining the convening authority from trying petitioner by court-martial, and a writ of mandamus ordering expungement of all federal records alleging that the accused deserted from the armed forces.

## II

### A

■■■ While Woodrick was an AFROTC cadet he was not subject to military jurisdiction.[2] However, upon being ordered to active duty as an enlisted member, pursuant to the enlistment contract which he executed in 1981 when he joined the AFROTC detachment at Memphis State University, he became subject to military jurisdiction as of the date on which he was

1. The various motions to file supplementary documents have been granted by the Court.

2. Article 2(a)(2), Uniform Code of Military Justice, 10 U.S.C. § 802(a)(2), which includes

ordered to report. *See* Art. 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1). Of course, if the order to report was illegal and had no effect, as petitioner claims, it did not create an obligation to perform active duty in the Air Force, and he would not be subject to prosecution for desertion, unauthorized absence, or any other purely military offenses. *Cf. United States v. Ornelas*, 2 U.S.C.M.A. 96, 6 C.M.R. 96 (1952). The legality of the order depends, in turn, upon the effect of the documents which Woodrick executed when he joined the AFROTC program at Memphis State University in 1981.

Woodrick insists that his enlistment contract was a nullity because it was induced by material misrepresentations of agents of the Air Force. At one time this Court took the position that misrepresentations by a recruiter precluded exercise of any type of court-martial jurisdiction. *See United States v. Russo*, 1 M.J. 134 (C.M.A. 1975). However, this view, which was criticized in many quarters, did not find favor with Congress, and it was legislatively overruled in 1979 by enactment of Public Law 96–107, § 801, 93 Stat. 810. *See United States v. McDonagh*, 14 M.J. 415 (C.M. A.1983). Consequently, Article 2(b) of the Uniform Code now provides:

The voluntary enlistment of any person who has the capacity to understand the significance of enlisting in the armed forces shall be valid for purposes of jurisdiction under subsection (a) of this section and a change of status from civilian to member of the armed forces shall be effective upon the taking of the oath of enlistment.

While Congress may not have had in mind the situation of someone who enlisted in the Air Force Reserve incident to joining the AFROTC program, the language of the statute would seem relevant in determining the jurisdiction of a court-martial to try

"[c]adets, aviation cadets, and midshipmen," applies to cadets at the service academies, but it does not encompass AFROTC cadets.

petitioner. However, we doubt that this statute precludes rescission of an enlistment contract induced by material misrepresentation. If such a right of rescission exists, then there is the further question of its effect on a prosecution for a purely military offense.

■ Although these issues concern military jurisdiction and are complex, they may be decided by a court-martial—just as in Ornelas the court-martial was allowed to determine whether the accused had been lawfully inducted into the Army. Indeed, when the enlistment contract and the Air Force order for Woodrick to perform active duty—an order which should be presumed legal—are viewed together, a prima facie case exists that the court-martial has jurisdiction over the person and the offense; and the accused would have the burden of producing evidence which tended to disprove such jurisdiction.[3]

### B

Even though a court-martial would be competent to determine whether Woodrick's enlistment was voidable because of a misrepresentation and whether he was lawfully ordered to active duty, we must answer the further question of whether a court-martial should decide these issues at this time. In that regard, we find guidance in the Supreme Court's opinion in *Parisi v. Davidson*, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972).

Parisi was seeking a writ of habeas corpus to obtain his release from the Army. He claimed that he was a conscientious objector for whom, after his induction, "earlier doubts about military service had crystallized into a firm conviction that any form of military activity conflicted irreconcilably with his religious beliefs." Army officials had differed about the validity of his claim; but ultimately it was denied. *Id.*

at 35, 92 S.Ct. at 816. Thereupon, he had "applied to the Army Board for Correction of Military Records [ABCMR] ... for administrative review of that" denial. *Id.* at 35–36, 92 S.Ct. at 817. Four days later, he commenced a habeas corpus proceeding in Federal Court, wherein he claimed that "denial of his conscientious objector application was without basis in fact. He sought discharge from the Army and requested a preliminary injunction to prevent his transfer out of the [District Court's] jurisdiction ... and to prohibit further training preparatory to being transferred to Vietnam. The District Court declined ... to consider the merits of" his petition, "but it retained jurisdiction pending a decision by the" ABCMR. In the meantime, Army authorities were enjoined "from requiring" Parisi "to participate in activity or training beyond" the noncombatant duties he was performing.

"Shortly thereafter ... [he] received orders to report to Fort Lewis, Washington, for deployment to Vietnam, where he was to perform noncombatant duties similar to those that had been assigned to him in this country." Parisi's efforts to obtain a stay order of some type were unsuccessful. Ultimately, "[h]e refused ... to obey a military order to board a plane for Vietnam"; and he was then charged under Article 90, UCMJ, 10 U.S.C. § 890. 405 U.S. at 36, 92 S.Ct. at 817. The ABCMR rejected Parisi's "application for relief from ... denial of his conscientious objector application," whereupon "[t]he District Court ... ordered the" Government "to show cause why the pending writ of habeas corpus should not issue." However, upon "the Government's motion, the District Court" subsequently "entered an order deferring consideration of the habeas corpus petition until final determination of the criminal charge then pending in the military court system." *Id.* at 37, 92 S.Ct. at 817. Eight

---

**3.** There has been a difference of opinion in this Court and elsewhere as to the jurisdiction of a court-martial to try a fraudulent discharge case if the discharge has not been revoked by a civilian court. *See United States v. Cole,* 24 M.J. 18 (C.M.A.1987); *Wickham v. Hall,* 12 M.J. 145 (C.M.A.1981); *Wickham v. Hall,* 706 F.2d 713 (5th Cir.1983). In the present case, however, Woodrick cannot claim that military authorities have themselves already determined that he is not in a military status.

days later a court-martial convicted him as charged. The Court of Appeals for the Ninth Circuit affirmed the order of the District Court, whereupon Parisi sought certiorari from the United States Supreme Court. "At the time of oral argument" in the Supreme Court—some 4 months before its decision was rendered—Parisi's "appeal from" his "conviction was pending in a court of military review." *Id..* at 36 n. 1, 92 S.Ct. at 817 n. 1.

In reversing, the Supreme Court held that neither the doctrine of exhaustion of administrative remedies nor that of "comity between federal civilian courts and the military system of justice ... required a stay of the habeas corpus proceedings." *Id.* at 37, 92 S.Ct. at 817. As the Court noted, the available administrative remedies had already been exhausted; and

> if the court-martial charge had not intervened, the District Court would have been wrong in not proceeding to an expeditious consideration of the merits of the petitioner's claim. *For the writ of habeas corpus has long been recognized as the appropriate remedy for servicemen who claim to be unlawfully retained in the armed forces.*

405 U.S. at 39, 92 S.Ct. at 818 (emphasis added).

With respect to the Government's claim that the habeas corpus proceeding should be delayed in order to eliminate " 'needless friction' between the federal civilian and military judicial systems" (*id.* at 40, 92 S.Ct. at 819), the Court emphasized that the issue did

> not concern a federal district court's direct intervention in a case arising in the military court system. *Cf. Gusik v. Schilder, supra* [340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950) ]; *Noyd v. Bond,* 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 [ (1969) ]. The petitioner's application for an administrative discharge— upon which the habeas corpus petition was based—antedated and was independent of the military criminal proceedings.

The question here, therefore, is whether a federal court should postpone adjudi-

cation of an independent civil lawsuit clearly within its original jurisdiction. Under accepted principles of comity, the court should stay its hand only if the relief the petitioner seeks—discharge as a conscientious objector—would also be available to him with reasonable promptness and certainty through the machinery of the military judicial system in its processing of the court-martial charge. [Citations omitted.] For the reasons that follow, we are not persuaded that such relief would be even potentially available, much less that it would be either prompt or certain.

> Courts-martial are not convened to review and rectify administrative denials of conscientious objector claims or to release conscientious objectors from military service. They are convened to adjudicate charges of criminal violations of military law.

*Id.* at 41–42, 92 S.Ct. at 820.

Concerning the Government's contention that Parisi could present in his court-martial the defense that he had been wrongfully denied an administrative discharge as a conscientious objector, the Court expressed some doubt about the availability of the defense. Moreover, even if the defense existed, it

> offers, at best, no more than a defense to a criminal charge. Like any other legal or factual defense, it would, if successfully asserted at trial or on appeal, entitle the defendant to only an acquittal— not to the discharge from military service that he seeks in the habeas corpus proceeding.

*Id.* at 43, 92 S.Ct. at 820–21 (footnote omitted). In closing, the Court referred to "the basic principles of comity that must prevail between civilian courts and the military judicial system" and stated that

> a federal district court, even though upholding the merits of the conscientious objector claim of a serviceman against whom court-martial charges are pending, should give careful consideration to the

appropriate demands of comity in effectuating its habeas corpus decree.

*Id.* at 46, 92 S.Ct. at 822 (footnote omitted).

Consistent with the Supreme Court's statement that "habeas corpus has long been recognized as the appropriate remedy for servicemen who claim to be unlawfully retained in the armed forces," *id.* at 39, 92 S.Ct. at 818, habeas corpus proceedings have been utilized to determine whether, under the terms of an enlistment contract, a petitioner was required to remain in the armed services. For example, in *Peavy v. Warner,* 493 F.2d 748 (5th Cir.1974), and in *Shelton v. Brunson,* 465 F.2d 144 (5th Cir.1972), servicemembers were allowed to use such a proceeding to seek rescission of enlistment contracts induced through material misrepresentations.

Whether, as in *Parisi,* a claim is made for release from military status by reason of conscientious objection or whether instead the claim is for release because of a material misrepresentation, a court-martial is not the most convenient forum to handle the matter. These tribunals "are not convened to review and rectify administrative denials of" release from active duty. *Id.* 405 U.S. at 42, 92 S.Ct. at 820. Furthermore, the issues of contract law involved here are not those in which courts-martial "have a special competence." *Id.* at 39 n. 6, 92 S.Ct. at 819 n. 6.

■■■ *Parisi* makes clear that there are many reasons why it would be desirable if the validity of Woodrick's enlistment contract could be adjudicated in a Federal District Court, rather than before a court-martial. Moreover, it seems clear that, under the principles of comity adverted to in *Parisi,* the military justice system properly may defer to proceedings in the Federal civilian courts. Just as the Supreme Court urged Federal civilian courts to "give careful consideration to the appropriate demands of comity," *id.* at 46, 92 S.Ct. at 822, when related proceedings are pending before courts-martial, the military justice system should consider the "demands of comity" in connection with related proceedings in a Federal District Court.

Up to this point, there has been no trial by court-martial.[4] On the other hand, extensive proceedings have taken place in the civilian courts. After an evidentiary hearing, findings were reached by the Magistrate and adopted by the District Court when it issued the writ of habeas corpus. The vacation of the habeas writ by the Court of Appeals because of Woodrick's failure to exhaust administrative remedies probably terminated any effect that those findings might otherwise have had on the court-martial proceedings.[5] Nonetheless, the circumstance that these findings were rendered after an evidentiary hearing demonstrates that Woodrick's attack on his enlistment contract is not frivolous. This, in turn, provides an additional reason to delay court-martial proceedings until Woodrick's claims have been finally adjudicated in the civilian courts.

### C

■■■ Parisi sought judicial and administrative relief before disobeying military orders and thereby precipitating court-martial action. Woodrick, on the other hand, exercised self-help by dropping out of AFROTC classes and failing to report for duty as ordered. Certainly, his proper procedure would have been to seek an injunction against enforcement of the order to report for active duty, rather than to disregard it. His lawless behavior in this regard gives us concern; and perhaps it affects his entitlement to the equitable remedy of rescission of his enlistment contract by reason of misrepresentation. However, we do not believe that Woodrick's actions require that we ignore the "demands of comity."

---

**4.** In *Noyd v. Bond,* 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969), which required exhaustion of remedies within the military justice system, petitioner had already been convicted by general court-martial.

**5.** We need not speculate on what effect those findings might have had if the habeas writ had not been vacated.

## D

The Court of Appeals decided that exhaustion of administrative remedies was a prerequisite for seeking habeas corpus. Judicial relief in the District Court will not be available until this process is concluded. Thus, the Supreme Court's premise in *Parisi* that proceedings in the military justice system would be less prompt than in the District Court may not apply here.

Even so, we believe Woodrick should have a reasonable opportunity to obtain habeas relief before any trial by court-martial takes place. We are unsure about the availability of the remedies to which the Court of Appeals adverted. One was an application to the Air Force Board for Correction of Military Records. However, in 1980 the Board "stated that it did not have the authority to grant ... [the applicant] a discharge, an issue the Board thought best suited for civil[ian] court." *See* 800 F.2d at 1417. We note, too, that at the time of *Parisi*, the Supreme Court observed that a question existed about the availability from the Correction Board of relief similar to that which Woodrick now has been directed to seek from the Board. 405 U.S. at 38 n.3. On the other hand, "the Secretary of the Board" advised the Court of Appeals that the Board "was empowered to grant a discharge" to Woodrick. 800 F.2d at 1417–18.

The Court of Appeals also concluded that Woodrick might file a complaint of wrong under Article 138 of the Uniform Code, 10 U.S.C § 938. Subsequent to oral argument, Woodrick's counsel filed with the Court a letter from Lieutenant General John A. Shaud which purported to constitute "final action" on Woodrick's complaint. According to that document,

the basic issue underlying your complaint concerns whether you are presently subject to military jurisdiction. This entire issue will be resolved within the framework of the military judicial system. Since the subject matter of your complaint is already under consideration within the military judicial system, you must look to that channel for resolution of your complaint.

Thus, the Air Force commander to whom the Article 138 complaint was submitted seems now to be taking the position that Woodrick must assert his claim in a court-martial. This is Catch–22 with a vengeance.[6] Also, it seems contrary to the rationale of *Parisi*.

Finally, the Court of Appeals referred to the remedy of a discharge in lieu of court-martial. From our understanding of this kind of discharge, we are unsure how it could provide all the relief which Woodrick was seeking in his action in the District Court. Moreover, it might create a stigma that would not result from the other types of administrative or judicial relief.

Apparently Woodrick is exercising due diligence in exhausting his remedies. Meanwhile, it appears that his habeas action has been dismissed. Since exhaustion of remedies is not a jurisdictional requirement, *see, e.g., NLRB v. Industrial Union of Marine & Shipbuilding Workers of America*, 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 1723 n. 8, 20 L.Ed.2d 706 (1968), dismissal would not seem to have been necessary.[7] Indeed, in *Parisi*, the District Court reserved jurisdiction over the habeas corpus application while administrative remedies were being exhausted.[8]

---

6. Apparently, the Air Force has a diversity of views with respect to the availability of remedies. The lawyers who argued for exhaustion of remedies before the Court of Appeals apparently contended that Article 138 would be an available remedy for Woodrick, so he should not receive habeas corpus relief. The lawyers who advised the commander as to the Article 138 complaint seemingly concluded that this remedy was not available to Woodrick and that his remedy was to assert a defense in a trial by court-martial.

7. The Court of Appeals reversed the District Court and vacated the habeas writ. The opinion, as reported, did not specifically direct dismissal of the habeas proceeding.

8. Indeed, it would seem fairer for a court to retain jurisdiction in such cases—especially where, as here, it is unclear what administrative remedies exist and when they will have been exhausted. Otherwise, a petitioner for habeas corpus relief will be compelled to experience successive dismissals and to initiate a new ac-

Woodrick's action, however, has apparently been dismissed. Thus, after exhausting his administrative remedies, he probably will have to file another petition for a writ of habeas corpus. However, we see no reason why our action should hinge on the District Court's having entered an order of dismissal, rather than an order abating the habeas corpus proceeding.

Accordingly, we have concluded that, by reason of comity and sound judicial administration,[9] trial by court-martial should be stayed until Woodrick has exhausted his judicial remedies. Consistent with the ruling of the Court of Appeals, a stay of court-martial proceedings to allow exhaustion of judicial remedies should carry with it an opportunity for Woodrick to exhaust the administrative remedies whose invocation is being required as a condition for his access to habeas relief. Of course, any stay must be predicated on Woodrick's continuing to proceed with reasonable diligence in his quest for administrative and judicial relief.

**E**

Petitioner has requested that this Court dismiss the court-martial charges on the grounds that he was unlawfully ordered to active duty. In line with our view of comity, we should not consider this request until Woodrick's claims for administrative relief from the Air Force and judicial relief from the District Court have been finally resolved.[10]

**III**

Accordingly, it is ordered that no court-martial proceedings shall be conducted against petitioner on the charges that have been preferred against him until he has exhausted his judicial remedies in the United States District Court and any appellate review thereof. Counsel for petitioner shall advise the Court by July 29, 1987, and every 90 days thereafter, of the status of the administrative and judicial proceedings. In all other respects, the petition for extraordinary relief is denied at this time.[11]

Judges COX and SULLIVAN concur.

---

tion if the court decides that some administrative remedy remains to be exhausted.

**9.** The District Court has a flexibility and breadth of remedy that would not be available to a court-martial. For example, the District Court probably would have the power to condition rescission of the enlistment contract upon Woodrick's reimbursement of the Air Force for any payments or other benefits he received while an AFROTC cadet.

**10.** We reserve the question of what effect, if any, failure to receive administrative relief and judicial relief from the District Court would have on his right to assert his contractual claims in a court-martial. *Cf. United States v. McDonagh,* 14 M.J. 415 (C.M.A.1983).

**11.** This opinion explains our order of April 30, 1987, which directed this relief.